# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

Argued January 12, 2018　　　　Decided August 24, 2018

No. 16-3096

UNITED STATES OF AMERICA,
APPELLEE

v.

ALFREDO MOSQUERA-MURILLO, ALSO KNOWN AS ALFREDO
LOPEZ-GUTIERREZ,
APPELLANT

---

Consolidated with 16-3097, 16-3098

---

Appeals from the United States District Court
for the District of Columbia
(No. 1:13-cr-00134-3)
(No. 1:13-cr-00134-5)
(No. 1:13-cr-00134-4)

---

*Julia Fong Sheketoff*, pro bono, argued the cause for appellant. With her on the briefs were *Louis K. Fisher* and *Sparkle L. Sooknanan*, pro bono, *A.J. Kramer*, Federal Public Defender, and *Richard K. Glibert* and *Carmen D. Hernandez*, appointed by the court.

*John M. Pellettieri*, Attorney, U.S. Department of Justice, argued the cause for appellee. With him on the brief were

*Trevor N. McFadden*, Deputy Assistant Attorney General, and *Adrienne L. Rose*, Attorney. *John Alex Romano*, Attorney, and *Elizabeth Trosman*, Assistant U.S. Attorney, entered appearances.

Before: SRINIVASAN and MILLETT, *Circuit Judges*, and SENTELLE, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* SRINIVASAN.

SRINIVASAN, *Circuit Judge*:  In June 2012, the United States Coast Guard intercepted a Colombian vessel called the Mistby, which was transporting cocaine and marijuana to Panama.  The three defendants in these consolidated cases pleaded guilty to conspiring to distribute, and possess with intent to distribute, the drugs on board the Mistby, in violation of the Maritime Drug Law Enforcement Act (MDLEA), 46 U.S.C. § 70501 et seq., and the Controlled Substances Import and Export Act, 21 U.S.C. § 951 et seq.  Each defendant was sentenced to 10 years of imprisonment.

The defendants now appeal on two grounds.  First, they argue that the district court lacked subject-matter jurisdiction over their prosecutions because they were not on board the Mistby when it was intercepted.  In the defendants' view, Colombia's assent to U.S. jurisdiction over individuals associated with the Mistby was limited to persons found on board the vessel.  Second, the defendants contend that their offense of conviction is covered by the so-called safety-valve provision, 18 U.S.C. § 3553(f).  That provision, in certain circumstances, exempts covered offenses from mandatory-minimum sentences such as the 10-year sentences imposed against the defendants.

We conclude that the district court had subject-matter jurisdiction over the defendants' prosecutions, but that the defendants' offense is covered by the safety-valve provision. We therefore vacate the defendants' sentences and remand for resentencing.

I.

The Coast Guard first spotted the Mistby on the high seas about 70 nautical miles off the coast of Panama. When the Coast Guard approached, the Mistby fled, and its crew began to dump cargo overboard. The cargo turned out to be 22 bales of drugs, containing more than 220 kilograms of cocaine and more than 120 kilograms of marijuana.

The Coast Guard eventually overtook the Mistby and boarded it to determine its nationality, at which point the Mistby's captain claimed the vessel was registered in Colombia. The United States and Colombia have agreed by treaty to "cooperate in combating illicit traffic by sea." Agreement to Suppress Illicit Traffic by Sea, Colom.-U.S., art. 2, Feb. 20, 1997, T.I.A.S. No. 12,835. Pursuant to that treaty, the Coast Guard asked the Colombian Navy (i) to verify that the Mistby was registered in Colombia, and (ii) to grant the Coast Guard permission to search the vessel. *See id.* art. 7. The Colombian Navy granted both requests. The Coast Guard then searched the Mistby and arrested the people on board, but the defendants were not among them.

The next day, the Coast Guard asked the Colombian Navy to confirm that, under Article 16 of the treaty, the United States had jurisdiction over the Mistby. The Colombian Navy did so on June 26, stating that, under the "agreement signed by the governments of the United States and Colombia, [the United States could] exercise their jurisdiction." Ardila M. Hector,

Colombian Naval Operations Ctr., Response to Request for Interpretation of Article 16(1) of the Maritime Agreement Col.-U.S. (June 26, 2012) (formatting modified).

The Coast Guard memorialized the Colombian Navy's response in a certification, which reads, in relevant part:

> On June 26, 2012, Colombian authorities confirmed and concurred with the United States' interpretation of Article 16 of the Agreement, thereby waiving objection to the enforcement of United States law by the United States over the go-fast vessel MISTBY, all associated contraband, and persons on board.

Salvatore J. Fazio, U.S. Coast Guard, Certification for the Maritime Drug Law Enforcement Act Case Involving Go-Fast Vessel Mistby (Colombia) ¶ 4.e (Aug. 10, 2012) (hereinafter Coast Guard Certification). "Accordingly," the certification concludes, "the Government of the United States determined the go-fast vessel MISTBY was subject to the jurisdiction of the United States pursuant to 46 U.S.C. § 70502(c)(1)(C)." *Id.* ¶ 4.f.

Months later, the three defendants—Alfredo Mosquera-Murillo, Antonio Moreno-Membache, and Joaquin Chang-Rendon—were charged with conspiring to distribute, and possess with intent to distribute, the drugs transported on board the Mistby, in violation of 46 U.S.C. §§ 70503 and 70506(b), and 21 U.S.C. § 960(b)(1)(B) and (b)(2)(G). The government's theory as to each defendant's involvement was as follows: that Chang-Rendon (a civilian employee of the Colombian Navy) knew the patrol routes of Colombian and American law-enforcement vessels and passed that information along to Mosquera-Murillo; that Mosquera-

Murillo in turn conveyed the information to the people transporting the drugs; and that Moreno-Membache helped move the drugs to the Colombian coast and then load them onto the Mistby.  At the time the defendants were charged, all three of them were still in Colombia.  The United States thus requested extradition, which Colombia granted.

Chang-Rendon and Mosquera-Murillo moved to dismiss the indictment on the ground that the district court lacked subject-matter jurisdiction over their prosecutions.  The government claimed that the district court had jurisdiction under 46 U.S.C. § 70502(c)(1)(C), which applies if the vessel on which an MDLEA offense was committed is "a vessel registered in a foreign nation [and] that nation has consented or waived objection to the enforcement of United States law by the United States."  The defendants responded that, as shown by the Coast Guard's certification, Colombia waived objection to the United States exercising jurisdiction over the "MISTBY, all associated contraband, and persons on board"—but not persons like the defendants who never set foot on the vessel.  Coast Guard Certification ¶ 4.e.

The district court rejected that argument.  The court held that "a foreign government's waiver of jurisdiction over a particular vessel . . . establish[es a district] court's subject-matter jurisdiction over a subsequent prosecution of any land-based co-conspirators." *United States v. Mosquera-Murillo*, 153 F. Supp. 3d 130, 158 (D.D.C. 2015).  And in any event, the court explained, the notion that Colombia had not consented to the defendants' prosecutions was difficult to square "with the Colombian government's subsequent extradition of the defendants to the United States." *Id.* at 159.

The defendants then pleaded guilty.  In their plea agreements, they acknowledged that, given the quantity of

cocaine involved, the district court ordinarily would be required to impose a mandatory-minimum sentence of 10 years of imprisonment. *See* 21 U.S.C. § 960(b)(1)(B). But the defendants reserved their rights (i) to argue they were eligible for relief from that mandatory-minimum sentence under the safety-valve provision, 18 U.S.C. § 3553(f), and (ii) to appeal any contrary determination by the district court.

The safety-valve provision states that sentencing relief is available only "in the case of an offense under" 21 U.S.C. §§ 841, 844, 846, 960 or 963. 18 U.S.C. § 3553(f). The government argued that, because that list does not include any provision of the MDLEA, the defendants' offense was not covered. The defendants responded that, because 21 U.S.C. § 960(b) supplied the penalties for their MDLEA violation, the violation qualified as "an offense under" § 960.

The district court agreed with the government, holding that the defendants were ineligible for safety-valve relief. *United States v. Mosquera-Murillo*, 172 F. Supp. 3d 24, 38 (D.D.C. 2016). The court thus sentenced each defendant to the mandatory-minimum sentence of 10 years. This appeal followed.

II.

In this appeal, the defendants renew two arguments they pressed unsuccessfully in the district court: that the district court lacked subject-matter jurisdiction over their prosecutions, and that they were eligible for safety-valve relief from the 10-year mandatory-minimum.

Despite the defendants' guilty pleas, they have not waived or forfeited either argument. Challenges to a district court's subject-matter jurisdiction can never be waived by plea.

*United States v. Miranda*, 780 F.3d 1185, 1188 (D.C. Cir. 2015). Nor can such challenges be forfeited, so Moreno-Membache's failure to contest subject-matter jurisdiction in the district court does not preclude him from raising the challenge now. And although sentencing challenges can be waived, all three defendants entered conditional pleas reserving their right to appeal the district court's determination that they were ineligible for safety-valve relief. *See id.* (citing Fed. R. Crim. P. 11(a)(2)). We therefore consider both the district court's subject-matter jurisdiction and the defendants' safety-valve eligibility.

A.

The defendants initially argue that the district court lacked subject-matter jurisdiction over their prosecutions. The MDLEA criminalizes certain drug-related acts committed "on board a covered vessel," 46 U.S.C. § 70503(a), as well as conspiracies to commit those acts, *id.* § 70506(b). We have held that a defendant can violate the Act's conspiracy provision without personally setting foot "on board a covered vessel," *id.* § 70503(a), so long as a co-conspirator commits a prohibited act while "on board a covered vessel" and that act is attributable to the defendant under ordinary principles of conspiracy law. *United States v. Ballestas*, 795 F.3d 138, 145-46 (D.C. Cir. 2015); *see Pinkerton v. United States*, 328 U.S. 640, 647 (1946).

The MDLEA defines "covered vessel" to include a vessel "subject to the jurisdiction of the United States." 46 U.S.C. § 70503(e)(1). Relatedly, the MDLEA provides that "[j]urisdiction of the United States with respect to a vessel . . . is not an element of an offense" but is instead a "preliminary question[] of law to be determined solely by the trial judge." *Id.* § 70504(a). Construing those provisions, we have held that,

"whether a vessel is 'subject to the jurisdiction of the United States' is a [question] of subject-matter jurisdiction." *Miranda*, 780 F.3d at 1192.

In this case, the district court's subject-matter jurisdiction turns on the applicability of 46 U.S.C. § 70502(c)(1)(C), which provides that a vessel is "subject to the jurisdiction of the United States"—and thus is a "covered vessel"—if it is "registered in a foreign nation [and] that nation has consented or waived objection to the enforcement of United States law by the United States." Under the MDLEA, "[c]onsent or waiver of objection by a foreign nation to the enforcement of United States law by the United States . . . is proved conclusively by certification of the [U.S.] Secretary of State or the Secretary's designee." *Id.* § 70502(c)(2)(B).

Here, the Secretary's designee—the Coast Guard's Liaison Officer to the State Department's Bureau of International Narcotics and Law Enforcement Affairs—certified that "Colombian authorities confirmed and concurred with the United States' interpretation of Article 16" of the treaty between the two countries, "thereby waiving objection to the enforcement of United States law by the United States over the go-fast vessel MISTBY, all associated contraband, and persons on board." Coast Guard Certification ¶ 4.e. The certification concludes that, "[a]ccordingly, the Government of the United States determined the go-fast vessel MISTBY was subject to the jurisdiction of the United States pursuant to 46 U.S.C. § 70502(c)(1)(C)." *Id.* ¶ 4.f.

If, as the certification's conclusion seems to say, the Mistby is "subject to the jurisdiction of the United States pursuant to 46 U.S.C. § 70502(c)(1)(C)" for purposes of all MDLEA actions related to the vessel, *id.*, then the district court had subject-matter jurisdiction over the defendants'

prosecutions:  in that event, the defendants' "charged conduct [would have] involved . . . one type of vessel 'subject to the jurisdiction of the United States,'" thus giving rise to subject-matter jurisdiction, *Miranda*, 780 F.3d at 1197.

The defendants argue, however, that the language of the certification's conclusion sweeps more broadly than the scope of Colombia's consent to U.S. jurisdiction.  The defendants submit that, if a foreign nation "consent[s] or waive[s] objection to the enforcement of United States law" over a vessel for purposes of proceedings against a specific person or item of property, 46 U.S.C. § 70502(c)(1)(C), then the vessel is "subject to the jurisdiction of the United States" for proceedings against that person or property—but is *not* "subject to the jurisdiction of the United States" for purposes of other MDLEA proceedings.  And that, the defendants say, is exactly what occurred here.

The defendants emphasize that, according to the Coast Guard's certification, Colombia "waiv[ed] objection to the enforcement of United States law by the United States over the go-fast vessel MISTBY, all associated contraband, and *persons on board*."  Coast Guard Certification ¶ 4.e (emphasis added). The reference to "persons on board," the defendants assert, means that Colombia denied consent to U.S. jurisdiction over the Mistby for purposes of proceedings against persons (like the defendants) who were *not* on board.

We think the defendants misunderstand the Coast Guard's certification.  Assuming the defendants are correct that a foreign nation can grant consent to U.S. jurisdiction over a vessel for some purposes but deny it for others, and assuming also that a district court's subject-matter jurisdiction under the MDLEA would rise or fall correspondingly, we do not read the

Coast Guard's certification to indicate that is what happened here.

The certification's use of the term "persons on board," *id.* ¶ 4.e, tracks the language of the statute, which discusses its "prohibitions" in terms of individuals "on board a covered vessel." 46 U.S.C. § 70503(a). And the statute, as explained, nonetheless reaches land-based co-conspirators because, pursuant to "well-established principle[s] of conspiracy law," the acts of a person who is on board the vessel can be attributed to a co-conspirator who remains on land. *Ballestas*, 795 F.3d at 145-46. By the same token, the certification's reference to "persons on board" does not exclude persons who remain on land: the acts of persons on board the Mistby would be attributed to land-based co-conspirators like the defendants, such that they too would effectively be considered to have committed a prohibited act on board. The indictment correspondingly charges the defendants with "conspir[ing], and agree[ing] to . . . distribute, and possess with intent to distribute," cocaine and marijuana "*on board a vessel* subject to the jurisdiction of the United States." *United States v. Mosquera-Murillo*, No. 13-cr-00134-03, Indictment at 2 (D.D.C. May 9, 2013), ECF No. 1 (emphasis added).

That is not necessarily to say that a foreign nation is incapable of consenting to the enforcement of U.S. law against persons on board a vessel without also consenting to the enforcement of U.S. law against land-based co-conspirators. In theory, a foreign nation could say—and thus a certification from the Coast Guard could report—that the nation consented to U.S. jurisdiction over a vessel with respect to persons on board, but denied consent with respect to co-conspirators not on board.

Here, though, the certification concludes by reporting, without qualification, that "the Government of the United States determined the go-fast vessel MISTBY was subject to the jurisdiction of the United States pursuant to 46 U.S.C. § 70502(c)(1)(C)." Coast Guard Certification ¶ 4.f. And the certification does not indicate that Colombia denied consent with respect to *any* particular class of MDLEA proceedings—including proceedings against co-conspirators not on board the Mistby. Rather, the certification confirms that Colombia's consent to U.S. jurisdiction encompasses persons on board the Mistby, whose conduct on board the vessel is attributable to co-conspirators like the defendants.

As a fallback argument, the defendants suggest that we should look behind the Coast Guard's certification and examine Colombian law for ourselves. If we do so, the defendants submit, we will find the following: (i) that the treaty contemplates the application of U.S. law only if Colombia's domestic law allows for it, T.I.A.S. No. 12,835 art. 16; and (ii) that Colombian law envisions the application of U.S. law only in the case of persons who are "on board" a Colombian vessel. Código Penal (Criminal Code) [C. Pen.] tit. II, § 217 (Colom.).

Even assuming, arguendo, that we should scrutinize Colombia's domestic law, we note that one provision of that law, introduced by the government in support of subject-matter jurisdiction, says that a "punishable act shall be deemed to have occurred" in "the place where the effect was produced or should have been produced." *Id.* § 201. That language mirrors the conspiracy-law principle under which a land-based conspirator in an enterprise that engages in prohibited conduct on board a vessel will be treated as having himself participated in the acts on board the vessel.

Our understanding of the Coast Guard's certification (and of Colombian law) is reinforced by Colombia's decision to grant the United States' extradition request concerning the defendants. If Colombia had in fact intended to deny consent to U.S. jurisdiction over the Mistby with respect to proceedings against persons who never came on board the vessel, Colombia could have given effect to that intention by declining to extradite the defendants. Colombia did not do so, however. That is not to say that the extradition itself gave rise to subject-matter jurisdiction. It is instead to say that the extradition fortifies our interpretation of the Coast Guard's earlier certification; and that certification substantiates the district court's subject-matter jurisdiction by demonstrating that the Mistby is a "vessel subject to the jurisdiction of the United States" for purposes of the defendants' prosecutions. 46 U.S.C. § 70502(c)(1).

In sum, we conclude that Colombia's waiver of objection to U.S. jurisdiction over the Mistby covers the defendants' MDLEA prosecutions. The district court therefore had subject-matter jurisdiction.

B.

The defendants next argue that the district court erred by holding that they were ineligible for safety-valve relief from the 10-year mandatory-minimum term to which they were sentenced. The safety-valve provision is entitled "Limitation on applicability of statutory minimums in certain cases." 18 U.S.C. § 3553(f). It provides that, "in the case of an offense under" one of five enumerated provisions—21 U.S.C. §§ 841, 844, 846, 960, or 963—"the court shall impose a sentence pursuant to [the sentencing] guidelines . . . without regard to any statutory minimum sentence, if the court finds at sentencing" that five specified requirements have been met.

In these cases, the district court did not reach whether those five requirements had been satisfied. Rather, the court deemed the defendants ineligible for safety-valve relief at the threshold, ruling that they had not been convicted of "an offense under" any of the five enumerated provisions. The court rejected the defendants' argument that their cases involved "an offense under" one of those provisions, namely 21 U.S.C. § 960.

The sole question we face here is whether the defendants' crime is "an offense under" § 960 within the meaning of the safety-valve provision. 18 U.S.C. § 3553(f). Reviewing that question of statutory interpretation de novo, *see United States v. Cordova*, 806 F.3d 1085, 1098 (D.C. Cir. 2015) (per curiam), we agree with the defendants: they were convicted of "an offense under" § 960, and they therefore satisfy the threshold condition for safety-valve eligibility.

To see why, it is necessary to examine the relationship between § 960 and the MDLEA provisions the defendants pleaded guilty to violating. The MDLEA prohibits, as relevant here, distributing, and possessing with intent to distribute, drugs on board a covered vessel. 46 U.S.C. § 70503(a)(1). A separate MDLEA provision prohibits "conspiring to violate section 70503," and establishes that anyone who so conspires "is subject to the same penalties as provided for violating section 70503." *Id.* § 70506(b).

What are those penalties? That is where 21 U.S.C. § 960 comes into play. Under the MDLEA, the first time a person violates "paragraph (1) of section 70503(a)," she "shall be punished as provided in . . . 21 U.S.C. [section] 960." 46 U.S.C. § 70506(a). So the first time a person conspires to violate § 70503(a)(1), she likewise "shall be punished as provided in . . . 21 U.S.C. [section] 960." *Id.* § 70506(a)-(b).

Because this was the defendants' first conviction for conspiring to violate § 70503(a)(1), § 960 supplied the penalties applicable to their crime.

Does that mean that the defendants' crime is "an offense under" § 960 for purposes of safety-valve eligibility? 18 U.S.C. § 3553(f). We conclude it does.

As an initial matter, even if the precise meaning of the phrase, "an offense under provision X" could be subject to some debate at the margins, there is no doubt about the following: a defendant's case involves "*an offense under*" provision X if the defendant has been convicted of *violating* provision X. So here, there is no dispute that the defendants' cases could be described as involving "an offense under" 46 U.S.C. §§ 70503(a)(1) and 70506(b). Indeed, the government, throughout its briefs, describes the defendants as having been "convicted of *violating* the MDLEA" or "*violating* a provision of the MDLEA," or, equivalently, as having been "convicted *under* the MDLEA" or of "an offense *under* the MDLEA." *E.g.,* Appellee's Br. 25, 27, 31-32, 34, 41, 43.

The defendants' crime of conviction, though, involved more than a violation of (or, equivalently, an offense under) the MDLEA. It also involved a violation of (or, equivalently, an offense under) 21 U.S.C. § 960. Offenses are defined by the provisions that supply their elements. *See Patterson v. New York*, 432 U.S. 197, 210 (1977). And here, the defendants' offense draws certain elements from the relevant MDLEA provisions, 46 U.S.C. §§ 70503(a)(1), 70506(b), and draws other elements from 21 U.S.C. § 960.

In particular, the MDLEA supplies the elements that make the defendants' conduct unlawful: (i) conspiring, (ii) to intentionally or knowingly, (iii) distribute or possess with

intent to distribute, (iv) a controlled substance, (v) while on board a vessel. 46 U.S.C. §§ 70503(a)(1), 70506(b). Meanwhile, § 960 supplies the offense elements of drug-type and drug-quantity—5 or more kilograms of cocaine, and 100 or more kilograms of marijuana—which bear on the degree of culpability and determine the statutory sentencing range. 21 U.S.C. § 960(b)(1)(B), (b)(2)(G). In that light, the defendants' crime is "an offense under" *both* the MDLEA *and* § 960, drawing offense elements from each.

The understanding that § 960 supplies offense elements coheres with the rule of *Apprendi v. New Jersey*, 530 U.S. 466 (2000). Under *Apprendi*, "any fact that increases the prescribed statutory maximum" penalty to which a defendant is exposed amounts to an offense element that "must be submitted to a jury, and proved beyond a reasonable doubt." *Id.* at 490; *see Alleyne v. United States*, 133 S. Ct. 2151, 2157 (2013) (plurality). The drug-type and drug-quantity elements set out in § 960(b) qualify as elements for purposes of *Apprendi* because they establish the maximum sentence. *See* 21 U.S.C. § 960(b)(1)(B)(ii) ("In the case of a violation . . . involving . . . 5 kilograms or more of . . . cocaine . . . the [defendant] shall be sentenced to a term of imprisonment of . . . not more than life."); *see also United States v. Fields*, 251 F.3d 1041, 1043 (D.C. Cir. 2001). And because the drug-type and drug-quantity criteria in § 960 constitute some of the elements of the defendants' offense (with the other elements supplied by the MDLEA), their cases involve "an offense under" § 960 for purposes of safety-valve eligibility. 18 U.S.C. § 3553(f).

As further confirmation that § 960 supplies elements of the defendants' offense, the government's indictment charged the defendants with violating both the MDLEA and § 960, not just the former. Specifically, the indictment charged the defendants with one count of conspiring to distribute, and possess with

intent to distribute, 5 or more kilograms of cocaine and 100 or more kilograms of marijuana on board a covered vessel, "all in violation of Title 46, United States Code, Sections 70503 and 70506(b)" *and "Title 21, United States Code, Sections 960(b)(1)(B) and (b)(2)(G)."* *United States v. Mosquera-Murrillo*, No. 13-cr-00134-03, Indictment at 2 (D.D.C. May 9, 2013), ECF No. 1 (emphasis added).

To the same effect, the government's plea agreement with each of the defendants stated that the defendant "agrees to plead guilty" to the charged conduct just described, once again "in violation of Title 46, United States Code, Sections 70503 and 70506(b)" *and "Title 21, United States Code, Sections 960(b)(1)(B) and (b)(2)(G)."* *E.g.*, *United States v. Mosquera-Murrillo*, No. 13-cr-00134-03, Plea Agreement at ¶ 1 (D.D.C. Jan. 20, 2016), ECF No. 185. The judgments against the defendants therefore pronounce that they were "adjudicated guilty" of the charged offense in violation of both the relevant MDLEA provisions and § 960(b). *E.g.*, *United States v. Mosquera-Murrillo*, No. 13-cr-00134-03, Judgment at 1 (D.D.C. Aug. 1, 2016), ECF No. 250.

Despite the government's indictment and plea agreements describing the defendants as having violated § 960, the government now submits that the defendants were not convicted of "an offense under" § 960 for purposes of safety-valve eligibility. The government points out that § 960 consists of two subsections. The first, subsection (a), lists certain "unlawful acts" by reference to drug offenses set out elsewhere in the code—e.g., "bring[ing] or possess[ing] on board a vessel, aircraft, or vehicle a controlled substance" "contrary to section 955." 21 U.S.C. § 960(a)(2). The second subsection, subsection (b), sets out the penalties for the offenses listed in subsection (a) based on drug-type and drug-quantity—e.g., "[i]n the case of a violation of subsection

(a)" involving "1 kilogram or more of . . . heroin," the "person committing such violation shall be sentenced to a term of imprisonment of not less than 10 years and not more than life." 21 U.S.C. § 960(b)(1)(A).

According to the government, the safety-valve provision's reference to "an offense under" § 960 means only those specific offenses listed in § 960(a)—not other offenses defined in part by the drug-type and drug-quantity elements set out in § 960(b). And because no MDLEA offense is listed in § 960(a), the government argues, the defendants' cases do not involve "an offense under" § 960 within the meaning of the safety-valve provision.

The government's reading of the safety-valve provision is unpersuasive. The statute speaks in terms of an "offense under" § 960 without limitation—not an offense under only § 960(a). Plus, the structure of § 960 demonstrates that the defendants' crime qualifies as "an offense under" § 960 no less than the crimes listed in § 960(a).

Subsection (a) of § 960 does not lay out any element of— and thus does not define in whole or in part—any criminal offense. Instead, § 960(a) merely lists certain offenses established elsewhere in the code. It does so for one reason: to identify a set of offenses for which § 960(b) supplies the drug-type and drug-quantity elements, and, accordingly, the range of potential penalties.

The MDLEA offense of which the defendants were convicted interacts with § 960(b) in exactly the same way as the offenses listed in § 960(a). Just as those offenses are established outside of § 960 and "shall be punished as provided in subsection (b)" of § 960, *id.* § 960(a), the MDLEA also establishes offenses outside of § 960, which likewise are

punished under the penalty scheme set out in § 960(b). Indeed, the MDLEA uses precisely the same wording in linking certain of its offenses to § 960(b) as § 960(a) does in linking its listed offenses to § 960(b): the MDLEA states that, for first-time offenders of 46 U.S.C. § 70503(a)(1), the defendant "shall be punished as provided in" § 960. 46 U.S.C. § 70506(a). *Compare id.*, *with* 21 U.S.C. § 960(a).

If both the offenses listed in § 960(a) and the relevant offenses under the MDLEA are (i) established outside of § 960, and (ii) make use of the drug-type and drug-quantity elements and associated penalties set forth in § 960(b), then there is no reason to conclude—as the government would—that the former qualify as "offenses under" § 960 for purpose of safety-valve eligibility whereas the latter do not. Nothing in the statutory text supports drawing such a distinction. Rather, just as a person who commits one of the offenses listed in § 960(a) violates both the provision establishing the offense (e.g., 21 U.S.C. § 955) and § 960(b), the defendants in these cases violated both the MDLEA and § 960(b). The government was right to describe the defendants' offenses in that manner in the indictment and plea agreements.

In addition, treating the defendants as having violated § 960, and thus as eligible for safety-valve relief, would align with Congress's nearly unbroken pattern of setting identical penalties for drug crimes committed in domestic waters and drug crimes committed on the high seas. When Congress criminalized opium possession on the high seas in 1914, it set the maximum penalty at two years, which at the time was the maximum penalty for importing opium into the United States. Act of Jan. 17, 1914, Pub. L. No. 63-46, §§ 2, 4, 38 Stat. 275, 276. In 1922, Congress simultaneously raised the maximum penalties for both offenses from two to ten years. Narcotic Drugs Import and Export Act, Pub. L. No. 67-227, § 2(c), 42

Stat. 596, 596 (1922). Then, in 1951, Congress simultaneously decreased the maximum penalties for both offenses from ten to five years. Boggs Act, Pub. L. No. 82-255, § 2(c), 65 Stat. 767, 767 (1951).

In 1970, Congress overhauled the drug code, repealing the statutes that define the offenses discussed above, and establishing a new prohibition—codified at 21 U.S.C. § 955—against importing drugs via the customs waters of the United States. Comprehensive Drug Abuse Prevention and Control Act of 1970, Pub. L. No. 91-513, § 1007, 84 Stat. 1236, 1288. Congress provided that the penalties applicable to that offense were those set forth in 21 U.S.C. § 960. *Id.* § 1010, 84 Stat. at 1290. Shortly thereafter, Congress enacted what is now known as the MDLEA, including its prohibition against possession with intent to distribute on the high seas. Pub. L. No. 96-350, § 1, 94 Stat. 1159, 1159 (1980). And Congress provided that § 960 also supplied the penalties for that offense. *Id.* § 1(g)(1), 94 Stat. at 1159.

In light of the century-long pattern of identical penalties for drug offenses committed in domestic waters and on the high seas, it is notable that, as both parties agree, offenders who violate § 955 are eligible for safety-valve relief. 21 U.S.C. § 960(a) (listing violations of § 955 as offenses punishable under § 960(b)). So if offenders who violate the MDLEA were ineligible for safety-valve relief, then, by enacting the safety-valve provision, Congress would have broken its 100-year pattern of penalty parity. We do not understand Congress to have done so.

Two other circuits have considered whether MDLEA offenses penalized under § 960(b) qualify as "offenses under" § 960 for purposes of the safety-valve provision. Both courts have concluded that such offenses do not qualify. *See United*

*States v. Pertuz-Pertuz*, 679 F.3d 1327, 1329 (11th Cir. 2012) (per curiam); *United States v. Gamboa-Cardenas*, 508 F.3d 491, 496 (9th Cir. 2007).  We respectfully reach the opposite conclusion.  Neither of those decisions expressly assesses whether the drug-type and drug-quantity facts supplied by § 960(b) constitute offense elements, such that an MDLEA offender penalized under § 960(b) should be considered someone who has violated both the MDLEA and § 960.  That consideration, as we have explained, is pivotal to our conclusion.

Our decision today, we note finally, does not necessarily resolve whether the safety valve covers a different provision to which both parties have directed our attention:  21 U.S.C. § 860.  In defining the offense of "[d]istribution or manufacturing in or near schools and colleges," § 860 incorporates both the unlawful-act elements of 21 U.S.C. § 841(a) and the drug-type and drug-quantity elements of § 841(b).  So one could argue that a violation of § 860 is an "offense under" § 841, in which case offenders who violate § 860 would be eligible for safety-valve relief, given that the safety valve lists § 841 as a covered provision.  That said, § 860 restates in full the unlawful-act elements of § 841(a), and then modifies the penalties prescribed by § 841(b) by doubling or tripling them.  That might mean that all the elements of an § 860 violation are supplied by § 860 itself, rather than by a combination of § 860 and § 841.  If that is the case, then offenders who violate § 860 would be ineligible for safety-valve relief, given that the safety valve does not list § 860 as a covered provision.  We need not decide the issue now; we simply note that today's decision does not necessarily answer the § 860 question either way.

21

* * * * *

For the foregoing reasons, we vacate the defendants' sentences and remand for resentencing, at which the district court should consider whether the defendants meet the five remaining safety-valve requirements.

*So ordered.*