[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13175
Non-Argument Calendar
_____

D.C. Docket No. 0:17-cr-60268-WPD-1

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

versus

CAMILO ANDRES LANDAZURI VARGAS,

Defendant - Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(June 24, 2019)

Before TJOFLAT, JILL PRYOR and ANDERSON, Circuit Judges.

PER CURIAM:

Camilo Andres Landazuri Vargas[1] pled guilty to one count of conspiracy to possess with intent to distribute five or more kilograms of cocaine, in violation of the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. §§ 70501-70508, and was sentenced to a mandatory minimum of 120 months' imprisonment. He now appeals his conviction and sentence, bringing a host of constitutional challenges against the MDLEA. After careful review, we conclude that our precedent forecloses each of his challenges and requires us to affirm.

## I.    FACTUAL, PROCEDURAL, AND STATUTORY BACKGROUND

The U.S. Coast Guard detained Vargas, a 19-year-old Colombian national, while he was aboard a go-fast vessel traveling in international waters about 205 nautical miles southwest of the border between Costa Rica and Panama. In the factual proffer submitted as part of his guilty plea, Vargas admitted that after the Coast Guard disabled the vessel's engines, he and the other people on board jettisoned cocaine from the vessel into the ocean. Neither Vargas's guilty plea nor his factual proffer provided any facts demonstrating that Vargas had a plan or intent to bring the cocaine to the United States. He was held at sea for 17 days before entering the United States.

---

[1] The record contains inconsistent spellings for one of Vargas's middle names. In the signed plea agreement and factual proffer, it is spelled "Landazuri," and Vargas's signature appears to match that spelling. *See* Doc. 50 at 5; Doc. 51 at 3. We therefore use Landazuri. "Doc. #" refers to the numbered entry on the district court's docket.

Before Vargas pled guilty, the government moved for a pretrial determination of jurisdiction and appended to its motion a certification from the U.S. Secretary of State's designee. The certification stated that, on the day it seized the go-fast vessel, the Coast Guard had asked the Government of Colombia to confirm whether the vessel was registered in Colombia, and the Government of Colombia had responded that it could neither confirm nor refute the vessel's registry. Under 46 U.S.C. § 70502(d)(1)(C), "a vessel aboard which the master or individual in charge makes a claim of registry and for which the claimed nation of registry does not affirmatively and unequivocally assert that the vessel is of its nationality" qualifies as a "[v]essel without nationality." Vargas later admitted in his factual proffer that the vessel was without nationality.

The district court denied Vargas's motion to dismiss the indictment, which challenged the MDLEA's constitutionality. The MDLEA prohibits a person from knowingly or intentionally possessing with intent to distribute a controlled substance while on board a "covered vessel," 46 U.S.C. § 70503(a), which includes a "vessel subject to the jurisdiction of the United States," *id.* § 70503(e)(1). In turn, a vessel without nationality is subject to U.S. jurisdiction. *Id.* § 70502(c)(1)(A). Vargas pled guilty to conspiring to possess with intent to distribute five or more kilograms of cocaine, in violation of 46 U.S.C. §§ 70503(a)(1) and 70506(b) and 21 U.S.C. § 960(b)(1)(B).

At sentencing, Vargas argued that he was eligible for safety valve relief under the version of 18 U.S.C. § 3553(f) then in place, which would permit the court to sentence him below the statutory mandatory minimum of 120 months' imprisonment prescribed in 21 U.S.C. § 960(b)(1)(B).  But the district court determined that Vargas could not access the safety valve and imposed the mandatory minimum.  This is his appeal.

## II.    STANDARD OF REVIEW

We review *de novo* whether a statute is constitutional, *United States v. Tinoco*, 304 F.3d 1088, 1099 (11th Cir. 2002), and a district court's interpretation of a statute, *United States v. Pertuz-Pertuz*, 679 F.3d 1327, 1328 (11th Cir. 2012).

## III.    DISCUSSION

Vargas challenges the MDLEA and his sentence on five constitutional grounds and one statutory interpretation ground.  Because our precedents foreclose each of his challenges, however, we must affirm his conviction and sentence.

## A. The MDLEA as Applied to Vargas's Conduct Is a Valid Exercise of Congress's Power Under the Felonies Clause.

The U.S. Constitution grants Congress the power "[t]o define and punish Piracies and Felonies committed on the high Seas, and Offences against the Law of Nations."  U.S. Const. art. I, § 8, cl. 10.  "The Supreme Court has interpreted that Clause to contain three distinct grants of power:  the power to define and punish piracies, the power to define and punish felonies committed on the high seas, and

4

the power to define and punish offenses against the law of nations." *United States v. Bellaizac-Hurtado*, 700 F.3d 1245, 1248 (11th Cir. 2012).

Vargas's Article I argument draws from scholarship by Eugene Kontorovich. According to Kontorovich, because piracy is both a felony and an offense against the law of nations, we must avoid reading these three clauses as unnecessarily redundant or superfluous. Eugene Kontorovich, *The "Define and Punish" Clause and the Limits of Universal Jurisdiction*, 103 Nw. U.L. Rev. 149, 152, 163-64, 167 (2009). Thus, Kontorovich posits, "Piracies" refers to the universal jurisdiction crime of piracy;[2] "Felonies" refers to serious crimes that both have a nexus with the United States and were committed in international waters; and "Offences against the Law of Nations" refers to crimes against international law that have a nexus with the United States. *See id.* at 159, 167-68, 192-93, 198, 203; *see also* Eugene Kontorovich, *Beyond the Article I Horizon: Congress's Enumerated Powers and Universal Jurisdiction over Drug Crimes*, 93 Minn. L. Rev. 1191, 1194-95, 1208 (2009). When the U.S. Constitution was ratified, piracy was the only universal jurisdiction crime, so Kontorovich allows that a modern reading of "Piracies" could include all "offenses that today's law of nations treats as universally cognizable, such as genocide and crimes against humanity"—even

---

[2] "[P]iracy is, by definition, robbery on the high seas." *Bellaizac-Hurtado*, 700 F.3d at 1248 (citing *United States v. Furlong*, 18 U.S. (5 Wheat.) 184, 198 (1820)).

without a U.S. nexus.  Kontorovich, *The "Define and Punish" Clause*, at 152, 165, 199-200.

Based on Kontorovich's research, Vargas argues that Congress may criminalize extraterritorial conduct only if it (1) qualifies as a universal jurisdiction offense and thus comes within a modern reading of the Piracies Clause or (2) presents a U.S. nexus and thus comes within the Felonies Clause.  Because drug trafficking is not a crime of universal jurisdiction and no U.S. nexus has been proven, Vargas contends, Congress cannot reach his conduct under the Piracies, Felonies, or Offences Clauses.

As a panel, we may not consider whether Vargas's arguments based on Kontorovich's analysis of the Piracies, Felonies, and Offences Clauses call into question the correctness of this Court's prior interpretations of the MDLEA and predecessor statutes because we are bound by the prior panel opinions of this Court "unless and until [they are] overruled or undermined to the point of abrogation by the Supreme Court or by this [C]ourt sitting *en banc*."  *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008); *see also In re Lambrix*, 776 F.3d 789, 794 (11th Cir. 2015) (explaining that "an overlooked reason or argument" in a prior panel's opinion provides no exception to the "prior-panel-precedent rule").  Our precedent holds that the MDLEA as applied to drug trafficking on stateless vessels in international waters—the conduct to which Vargas pled guilty—is a valid

6

exercise of Congress's Felonies Clause power, even without a U.S. nexus. *See, e.g.*, *United States v. Hernandez*, 864 F.3d 1292, 1303 (11th Cir. 2017) ("[T]he MDLEA [i]s a constitutional exercise of Congressional authority under the Felonies Clause, and . . . the conduct proscribed by the MDLEA need not have a nexus to the United States."), *cert. denied*, 138 S. Ct. 938 (2018), 138 S. Ct. 1019 (2018), 138 S. Ct. 1025 (2018), 138 S. Ct. 1043 (2018); *id.* at 1297-99 (concluding that the vessel was stateless and seized in international waters). We need not reach the questions of whether the Piracies Clause permits Congress to assert jurisdiction over other universal jurisdiction crimes without a U.S. nexus and whether drug trafficking is a universal jurisdiction crime because the Felonies Clause alone suffices to uphold the MDLEA as applied to Vargas.[3]

## B. No U.S. Nexus Is Required for the MDLEA To Comport with the Fifth Amendment's Due Process Clause.

Vargas invites us to follow the Ninth Circuit, which has held that a nexus with the United States is a necessary condition for extraterritorial jurisdiction to comply with the Fifth Amendment's Due Process Clause when the vessel is registered in a foreign country. *See United States v. Perlaza*, 439 F.3d 1149, 1160,

---

[3] We previously have held that operating a stateless vessel on the high seas is a universal jurisdiction crime. *See United States v. Marino-Garcia*, 679 F.2d 1373, 1382-83 (11th Cir. 1982). Whether the MDLEA's definitions of a vessel without nationality comport with international law definitions, *cf.* Kontorovich, *Beyond the Article I Horizon*, at 1228-29, 1251-52, is a question we need not address, however. Based on our precedent, the Felonies Clause alone suffices as the Article I authority for Congress's enactment of the MDLEA.

1168-69 (9th Cir. 2006); *see also United States v. Yousef*, 327 F.3d 56, 111-12 (2d Cir. 2003) (holding that a U.S. nexus must be demonstrated for a federal criminal statute to apply extraterritorially, but not reaching the vessel registry issue because it was not presented).  However, the Ninth Circuit has not imposed a nexus requirement when reviewing prosecutions of people who, like Vargas, were seized on stateless vessels.  *See Perlaza*, 439 F.3d at 1161.

Regardless of what other circuits have held in terms of due process requirements for foreign-flagged and stateless vessels, we are bound by our prior panel precedent, which holds that the Due Process Clause does not require that the proscribed conduct demonstrate a nexus with the United States.  *See, e.g.*, *United States v. Valois*, 915 F.3d 717, 722 (11th Cir. 2019) ("The defendants' MDLEA convictions do not violate their due process rights even if the offenses lack a nexus to the United States.").  We thus reject Vargas's argument that the MDLEA's lack of a nexus requirement violates due process.

## C. The MDLEA's Removal of the Jurisdictional Issue from Jury Consideration Does Not Violate Due Process or the Right to a Jury Trial.

The MDLEA provides that the question of whether a vessel is subject to the Act "is not an element of [the] offense" and is a "preliminary question[] . . . to be determined solely by the trial judge."  46 U.S.C. § 70504(a).  Vargas urges us to adopt the Ninth Circuit's position that the MDLEA violates the Fifth and Sixth Amendments by excluding the jurisdictional issue from the elements of the offense

8

and from jury consideration.  *See Perlaza*, 439 F.3d at 1166-67 (holding that

MDLEA jurisdictional questions must be submitted to the jury).

As an initial matter, we conclude that Vargas, by pleading guilty, waived his

right to bring this challenge.  "[A] valid guilty plea forgoes not only a fair trial, but

also other accompanying constitutional guarantees. . . . [T]hose simultaneously

relinquished rights include . . . the jury trial right[] and the right to confront

accusers . . . ."  *Class v. United States*, 138 S. Ct. 798, 805 (2018) (internal

quotation marks omitted).  Vargas expressly stipulated in the factual proffer

accompanying his plea agreement that there was "enough of a factual basis for the

Court to make a finding that the vessel in this case was a vessel without

nationality," Doc. 51 ¶ 5, which would bring it within the MDLEA's definition of

vessels subject to U.S. jurisdiction, 46 U.S.C. § 70502(c)(1)(A).  His Fifth and

Sixth Amendment challenge would "contradict th[is] admission[]" that he

"necessarily made upon entry of [his] voluntary plea of guilty."  *Class*, 138 S. Ct.

at 805 (internal quotation marks omitted).  Thus by waiving his right to a jury trial,

Vargas also waived any argument that a jury and not the judge should have

decided the jurisdictional issue.

Nevertheless, because our precedent squarely addresses Vargas's argument,

we note that it also fails on the merits.  Vargas is correct that the Fifth

Amendment's Due Process Clause and the Sixth Amendment's Jury Trial Clause

together require a matter to be submitted to the jury for proof beyond a reasonable doubt if the matter is an element of the offense that involves a determination of fact or a mixed determination of law and fact, *see United States v. Gaudin*, 515 U.S. 506, 511-12, 522-23 (1995); *Tinoco*, 304 F.3d at 1103, and that Congress may not "manipulate" this requirement simply by defining the jurisdictional hook as a non-element of the offense, *Harris v. United States*, 536 U.S. 545, 557-58 (2002), *overruled on other grounds by Alleyne v. United States*, 570 U.S. 99, 116 (2013).

But a panel of this Court has already examined whether 46 U.S.C. § 70504(a) was an unconstitutional effort by Congress to remove from the jury's consideration an essential element of an MDLEA offense and concluded that it was not. *See Tinoco*, 304 F.3d at 1109-11. Instead, our precedent holds that the MDLEA's jurisdictional hook is a "diplomatic courtesy" that bears "only on the diplomatic relations between the United States and foreign governments" and "d[oes] not affect the question of [a] defendant['s] guilt or innocence." *Id.* at 1108-09 (internal quotation marks omitted). Therefore, the district court did not err in declining to submit to the jury the question of whether the vessel on which Vargas was seized came within the MDLEA's definition of a "vessel without nationality," 46 U.S.C. § 70502(d)(1)(C), which would make it a "[v]essel subject to the jurisdiction of the United States," *id.* § 70502(c)(1)(A).

**D. MDLEA Convictions Entered Prior to the Enactment of the First Step Act Do Not Qualify for Safety Valve Relief, and the Distinction Between Territorial Versus Extraterritorial Drug Trafficking Does Not Violate Equal Protection.**

**1. Vargas's Statutory Argument**

While Vargas's appeal was pending, Congress added MDLEA offenses to the safety valve statute, 18 U.S.C. § 3553(f).  *See* First Step Act of 2018, Pub. L. No. 115-391, § 402(a)(1)(A)(ii), 132 Stat. 5194, 5221 (adding 46 U.S.C. §§ 70503 and 70506 to 18 U.S.C. § 3553(f)).  However, Congress made the amendment applicable to convictions entered only on and after the date of enactment, *id.* § 402(b), which means that Vargas may not benefit from the amendment.

When Vargas was convicted, the safety valve statute permitted district courts to sentence a defendant under the U.S. Sentencing Guidelines "without regard to" a statutory mandatory minimum only for "offense[s] under" 21 U.S.C. §§ 841, 844, 846, 960, and 963.  18 U.S.C. § 3553(f) (amended on December 21, 2018, after Vargas's conviction).  Vargas pled guilty to conspiring to possess with intent to distribute five or more kilograms of cocaine in violation of 46 U.S.C. §§ 70503(a)(1) and 70506(b) and 21 U.S.C. § 960(b)(1)(B).  Section 70506(b) provides, "A person attempting or conspiring to violate section 70503 of this title is subject to the same penalties as provided for violating section 70503."  Section 70503(a)(1) provides, "While on board a covered vessel [e.g., a "vessel subject to the jurisdiction of the United States," *id.* § 70503(e)(1)], an individual may not

11

knowingly or intentionally . . . possess with intent to . . . distribute[] a controlled substance."  Section 70506(a) provides, "A person violating paragraph (1) of section 70503(a) of this title shall be punished as provided in . . . 21 U.S.C. [§] 960 . . . ."  Section 960(b)(1)(B)(ii) prescribes a mandatory minimum of 120 months' imprisonment and a maximum of life imprisonment for first-time offenses involving five or more kilograms of cocaine.

Vargas points us to a recent pre-First Step Act case in which the D.C. Circuit concluded that MDLEA offenses qualify as "offense[s] under" 21 U.S.C. § 960. *United States v. Mosquera-Murillo*, 902 F.3d 285, 292 (D.C. Cir. 2018).  The D.C. Circuit observed that "§ 960 supplies the offense elements of drug-type and drug-quantity—5 or more kilograms of cocaine, and 100 or more kilograms of marijuana—[that] bear on the degree of culpability and determine the statutory sentencing range."  *Id.* at 293 (citing 21 U.S.C. § 960(b)(1)(B), (2)(G)).  Thus, the D.C. Circuit held, "the defendants' crime [wa]s 'an offense under' *both* the MDLEA *and* § 960, drawing offense elements from each."  *Id.*  The D.C. Circuit found further support for its conclusion in *Apprendi v. New Jersey*, in which the Supreme Court held that "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury[] and proved beyond a reasonable doubt."  530 U.S. 466, 490 (2000); *see Mosquera-Murillo*, 902 F.3d at 293.  The "drug-type and drug-quantity elements set out in § 960(b) qualify as

12

elements for purposes of *Apprendi* because they establish the maximum sentence," the D.C. Circuit held, and so the defendants' convictions "involve[d] 'an offense under' § 960 for purposes of safety-valve eligibility." *Id.*

Once again, we are bound by this Court's precedent to reject Vargas's argument. Prior to the enactment of the First Step Act of 2018, this Court held that "[a]lthough 46 U.S.C. § 70506(a) references section 960 as the penalty provision for violations of 46 U.S.C. § 70503, section 960 does not incorporate section 70503 by reference as an 'offense under' section 960." *Pertuz-Pertuz*, 679 F.3d at 1329. "Therefore, the plain text of the statutes shows that convictions under Title 46 of the U.S. Code—like Defendant's—entitle a defendant to no safety-valve sentencing relief." *Id.* Vargas's statutory safety valve argument based on the pre-First Step Act version of 18 U.S.C. § 3553(f) fails.

## 2. Vargas's Constitutional Argument

Vargas observes that our pre-First Step Act caselaw excluding 46 U.S.C. § 70503 offenses from 18 U.S.C. § 3553(f)'s safety valve means that people convicted of trafficking drugs extraterritorially prior to the First Step Act's enactment receive harsher sentences than people convicted of trafficking drugs inside the United States. This distinction, he argues, lacks a rational basis and

therefore violates the equal protection component of the Fifth Amendment's Due Process Clause.[4]

Again, though, our precedent requires us to reject his argument. This Court has held that "Congress has legitimate reasons to craft strict sentences for violations of the Act. In contrast with domestic drug offenses, international drug trafficking raises pressing concerns about foreign relations and global obligations." *United States v. Castillo*, 899 F.3d 1208, 1213 (11th Cir. 2018), *cert. denied*, 139 S. Ct. 796 (2019) (citing article 17 of the United Nations Convention Against Illicit Traffic in Narcotic Drugs and Psychotropic Substances, Dec. 20, 1988, 1582 U.N.T.S. 95, which obligates the United States to "co-operate to the fullest extent possible to suppress illicit traffic by sea"). "Moreover, the inherent difficulties of policing drug trafficking on the vast expanses of international waters suggest that Congress could have rationally concluded that harsh penalties are needed to deter would-be offenders." *Id.* The pre-First Step Act safety valve's distinction between domestic versus extraterritorial drug trafficking therefore does not violate equal protection.

---

[4] Vargas concedes that rational basis review applies because the distinction he has identified "does not infringe fundamental rights or concern a suspect class." *United States v. Castillo*, 899 F.3d 1208, 1213 (11th Cir. 2018) (alterations adopted) (internal quotation marks omitted), *cert. denied*, 139 S. Ct. 796 (2019).

14

**E. The MDLEA's Certification Procedure Does Not Violate Vargas's Rights to Due Process, a Jury Trial, or To Confront Witnesses.**

The MDLEA permits the government to establish that a vessel is a "[v]essel without nationality" using a "certification of the Secretary of State or the Secretary's designee" that the nation whose registry is claimed has not "affirmatively and unequivocally assert[ed] that the vessel is of its nationality." 46 U.S.C. § 70502(d)(1)(C), (2). Vargas raises three challenges to this certification procedure. First, he argues that it deprived him of the opportunity to present evidence on the facts surrounding the certification process in his case, in violation of the Fifth Amendment's Due Process Clause. Second, he argues that the jurisdictional issue is an element of the offense that must be submitted to a jury for proof beyond a reasonable doubt to comply with the Due Process Clause and the Sixth Amendment's Jury Trial Clause. Third, Vargas argues that the certification procedure deprived him of the opportunity to cross-examine government officials involved in certifying that the vessel was stateless, in violation of the Sixth Amendment's Confrontation Clause.

As in Part III.C, we conclude that Vargas's decision to plead guilty means that he waived his right to challenge the MDLEA's certification procedure. Waiving his right to a jury trial necessarily required Vargas to waive his rights to (1) present evidence (2) to a jury and (3) cross-examine government witnesses. *See Class*, 138 S. Ct. at 805. His challenge to the certification procedure

15

necessarily conflicts with his admission that he was aboard a stateless vessel.  *See id.*

That being said, because our precedent squarely addresses Vargas's arguments, we again note that they fail on the merits.  We reject his first and second arguments for the reasons stated in Part III.C.  Because the jurisdictional hook is not an element of the offense, it does not implicate the Fifth Amendment's Due Process Clause or the Sixth Amendment's Jury Trial Clause.  *See Tinoco*, 304 F.3d at 1108-10.  Precedent also forecloses his third argument.  "The Confrontation Clause protects a defendant's trial right to confront testimony offered against him to establish his guilt . . . ."  *United States v. Campbell*, 743 F.3d 802, 808 (11th Cir. 2014); *see also Cruz v. New York*, 481 U.S. 186, 190 (1987) ("Ordinarily, a witness is considered to be a witness 'against' a defendant for purposes of the Confrontation Clause only if his testimony is part of the body of evidence that the jury may consider in assessing his guilt.").  Because "the certification does not implicate either the guilt or [the] innocence of a defendant charged with an offense under the [MDLEA]," the certification procedure does not trigger the need for protection under the Confrontation Clause.  *Campbell*, 743 F.3d at 809.

16

## IV.    CONCLUSION

Although Vargas raises thought-provoking arguments about the proper interpretation and reach of the MDLEA, our precedents foreclose each of the bases on which he seeks to reverse his conviction and alter his sentence.  Thus we affirm his conviction and sentence.

**AFFIRMED.**