# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-40584

United States Court of Appeals
Fifth Circuit

**FILED**
July 27, 2018

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

      Plaintiff - Appellee

v.

ROGER ALFREDO ANCHUNDIA-ESPINOZA,

      Defendant - Appellant

Appeal from the United States District Court
for the Eastern District of Texas

Before CLEMENT, HIGGINSON, and HO, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

Roger Alfredo Anchundia-Espinoza pleaded guilty to conspiracy to possess, with the intent to distribute, cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a)(1), 70506(a) & (b) and 21 U.S.C. § 960. The district court denied Anchundia-Espinoza's requests for safety-valve and minor participant reductions. Anchundia-Espinoza appeals those denials. For the reasons set forth below, we AFFIRM.

## I.

Roger Alfredo Anchundia-Espinoza, a citizen of Ecuador, and three others were contracted by an unknown individual to transport cocaine. They

No. 17-40584

were each paid $1,000 up front for the service. They were also promised an additional $9,000 and a plane ticket once they reached their destination. On December 10, 2015, the group left the Esmeraldas area of Ecuador on a small boat. After traveling a number of miles in open waters and being provided additional fuel by two other boats, they met a larger boat, which contained the shipment of cocaine and two occupants. Anchundia-Espinoza and the three other men boarded the larger boat, and the two men on the larger boat took their smaller one (presumably back to Ecuador, although it is unclear). The four men traveled for five days, and each drove the boat at different times.

On December 15, 2015, the group met up with a boat named *Imemsa* and transferred the shipment of cocaine and their equipment to it. They intentionally sank the boat they had been traveling on and drove the *Imemsa* toward Mexico at a high rate of speed. There was a total of seven occupants on the *Imemsa*. Within two hours, a U.S. Marine Patrol Aircraft detected the *Imemsa*, and the U.S. Coast Guard sought to intercept it. The boat failed to comply with numerous demands to stop; after two warning shots, however, it finally stopped approximately 95 nautical miles southwest of the Mexico/Guatemala boarder. The driver of the boat made no claim of nationality for the vessel, so it was treated as without nationality, and U.S. officials boarded the boat. They found 35 bales of cocaine on board and another bail floating in the water attached to a line over the side of the boat. A later laboratory report prepared by the DEA revealed that the cocaine weighed 681.6 kilograms.

In January 2016, Anchundia-Espinoza and the six other men were indicted for conspiring to possess, with intent to distribute, five or more kilograms of cocaine while aboard a vessel subject to the jurisdiction of the United States, in violation of 46 U.S.C. §§ 70503(a)(1), 70506(a) & (b), and 21 U.S.C. § 960. Anchundia-Espinoza pleaded guilty without a plea agreement.

No. 17-40584

The punishment guidelines for § 70503 are provided at 21 U.S.C. § 960(b)(1)(B)(ii); the offense carries a statutory minimum sentence of 10 years' imprisonment and a maximum of life.

Using the 2016 Sentencing Guidelines, the Pre-sentence Report ("PSR") determined that Anchundia-Espinoza had a base offense level of 38 because he was responsible for 681.6 kilograms of cocaine—well above the 450 kilogram minimum in U.S.S.G. § 2D1.1, the provision providing the base offense levels for conspiracies. The offense level was increased by two levels under U.S.S.G. § 2D1.1(b)(3), which provides for an adjustment when the defendant acted as a captain or navigator aboard a vessel carrying a controlled substance. The defendant was then lowered to an offense level of 37 for acceptance of responsibility, pursuant to U.S.S.G. § 3E1.1(a) and (b). Finally, he had a criminal history category of I, and faced an advisory sentencing range of 210 to 262 months of imprisonment. And relevant to this appeal, the PSR provided that, "[s]ince the defendant was convicted of a 46 U.S.C. § 70503(a)(1) offense, the safety valve does not apply."

Anchundia-Espinoza filed two objections to the PSR. First, he objected to the denial of the safety valve reduction. Second, he objected to the denial of the "minor participant" reduction under U.S.S.G. § 3B1.2. The probation office disagreed with both objections.

The district court denied Anchundia-Espinoza's first objection because the safety valve provision applies only to the five offenses specified in 18 U.S.C. § 3553(f), and 46 U.S.C. § 70503 is not one of those offenses. The district court similarly denied Anchundia-Espinoza's request for the "minor participant" adjustment. The district court concluded that the average participants in this offense were Anchundia-Espinoza and his co-defendants, rather than the unknown number of unidentified and uncharged participants in the

No. 17-40584

conspiracy. It found that he was not substantially less culpable than those co-defendants.

The district court ultimately varied downward from the 210-month advisory minimum and sentenced Anchundia-Espinoza to 175 months in prison.[1]

## II.

On appeal, Anchundia-Espinoza challenges the district court's denial of two sentencing reductions by erring in its application of two relevant statutes. The district court's legal interpretation of a statutory provision is reviewed de novo. *United States v. Flanagan*, 80 F.3d 143, 145 (5th Cir. 1996). Factual findings made during sentencing, however, are reviewed for clear error. *United States v. Kiekow*, 872 F.3d 236, 247 (5th Cir. 2017). "Whether a defendant 'was a minor or minimal participant is a factual determination that we review for clear error.'" *United States v. Torres-Hernandez*, 843 F.3d 203, 207 (5th Cir. 2016) (quoting *United States v. Gomez-Valle*, 828 F.3d 324, 327 (5th Cir. 2016)). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, this court may not reverse, even if, had we been sitting as trier of fact, we might have weighed the evidence differently." *Kiekow*, 872 F.3d at 247 (quoting *United States v. Harris*, 740 F.3d 956, 967 (5th Cir. 2014)).

## III.

Anchundia-Espinoza first appeals the district court's denial of "safety valve" relief. The safety valve provision of U.S.S.G. § 5C1.2 allows a court to sentence a defendant below the statutory minimum sentence in certain instances. *United States v. Treft*, 447 F.3d 421, 426 (5th Cir. 2006). A defendant may qualify for a sentence below the statutory minimum if he meets the five

---

[1] The court expressed that it wanted to give him the same 168-month sentence that his co-defendants got, but it felt he should receive more time because he rejected the plea offer that his co-defendants accepted.

No. 17-40584

criteria set forth in 18 U.S.C. § 3553(f) (and also provided at § 5C1.2). *See United States v. Lopez*, 264 F.3d 527, 529–30 (5th Cir. 2001). In these circumstances, the defendant is also entitled to a two-level reduction in his offense level. *See id.* at 530; U.S.S.G. § 2D1.1(b)(17). The defendant bears the burden of establishing eligibility for the safety valve reduction. *Flanagan*, 80 F.3d at 146–47.

The safety valve provision set forth in 18 U.S.C. § 3553(f) provides:

> Notwithstanding any other provision of law, in the case of an offense under section 401, 404, or 406 of the Controlled Substances Act (21 U.S.C. 841, 844, 846) or section 1010 or 1013 of the Controlled Substances Import and Export Act (**21 U.S.C. 960**, 963), the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission under section 994 of title 28 without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that —
>
> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines;
>
> (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense;
>
> (3) the offense did not result in death or serious bodily injury to any person;
>
> (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and
>
> (5) not later than the time of the sentencing hearing, the defendant has truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not

preclude a determination by the court that the defendant has complied with this requirement.

(Emphasis added). U.S.S.G. § 5C1.2(a) similarly explains that § 3553(f) applies to specific offenses, including 21 U.S.C. § 960. The crux of the issue here is whether § 70503 falls under the safety valve relief because 21 U.S.C. § 960—which provides the penalties for § 70503—is enumerated in § 3553(f). Importantly, § 70503 is not an "offense under" § 960; section 960 merely provides the penalties for § 70503.

This issue presents a case of first impression for this circuit. As a general matter, however, this court has strictly limited the safety valve's application to the statutes listed in § 3553(f). *See, e.g.*, *United States v. Phillips*, 382 F.3d 489, 499–500 (5th Cir. 2004). Notably, the Eleventh and Ninth Circuits have addressed the issue presented here, and both courts held that the safety valve does not apply to violations of § 70503. *See United States v. Pertuz-Pertuz*, 679 F.3d 1327, 1328–29 (11th Cir. 2012); *United States v. Gamboa-Cardenas*, 508 F.3d 491, 496–97 (9th Cir. 2007). Anchundia-Espinoza argues that § 3553(f) is ambiguous, and he relies on the dissenting opinion in *Gamboa-Cardenas*, which reasoned that a plausible reading of § 3553(f) is that all of the crimes punishable under § 960 are subject to the safety valve. *See Gamboa-Cardenas*, 508 F.3d at 506–08 (Fisher, J., concurring in part and dissenting in part). The Eleventh Circuit rejected Anchundia-Espinoza's argument by explaining that the safety valve applies only to an "offense under" § 960 and not to a "sentence under" § 960. *Pertuz-Pertuz*, 679 F.3d at 1329.

The Supreme Court has instructed that "courts must presume that a legislature says in a statute what it means and means in a statute what it says there." *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 253–54 (1992). Our court, and other circuits, have confirmed "that there is no 'ambiguity concerning the

ambit of' § 3553(f)." *Phillips*, 382 F.3d at 500 (quoting *United States v. Kakatin*, 214 F.3d 1049, 1052 (9th Cir. 2000)). This court addressed a similar issue in *United States v. Phillips*. There, the defendant was convicted under 21 U.S.C. § 860. *Id.* at 492–93. Phillips urged that he was entitled to the safety valve reduction because his violation under § 860, although not enumerated in § 3553(f), was "merely a 'sentence enhancement,'" and § 21 U.S.C. § 841, which *is* specifically enumerated, is a lesser-included offense of § 860. *Id.* at 499. This court, similar to other circuits, rejected the argument. *Id.* at 499–500. It reasoned that it was "clear that § 841 and § 860 are separate substantive offenses, and that there is no ambiguity concerning the ambit of § 3553(f)." *Id.* at 500 (internal quotations omitted); *see also United States v. Anderson*, 200 F.3d 1344, 1348 (11th Cir. 2000) (reasoning that "[t]he selection of these five [enumerated] statutes reflects [a Congressional] intent to exclude others, including 21 U.S.C. § 860").

The Ninth Circuit, relying in part on this court's *Phillips* decision, addressed whether a conviction under § 70503[2] was entitled to the safety valve reduction. *Gamboa-Cardenas*, 508 F.3d at 496–99. It held that the statutes enumerated in § 3553(f) presented an exhaustive list. *Id.* at 498. Moreover, it explained that § 3553(f) was codified *after* the statute in question, so "Congress could have included [§ 70503] as easily as it included the other statutes specifically listed in § 3553(f). The timing of Congress's actions indicates that it consciously chose *not* to include [§ 70503] offenses on the safety valve list." *Id.* at 497–98. Finally, § 3553(f) applies to offenses *under* the enumerated statutes. *See id.* at 497. Section 70503 is an offense *penalized* by an enumerated statute, and therefore it is not subject to the safety valve provision. *See id.*

---

[2] The court actually considered whether § 70503's predecessor, 46 U.S.C. § 1903, was applicable.

No. 17-40584

Likewise, the Eleventh Circuit held that, because the defendant was not convicted under a statute appearing in § 3553(f), the defendant was not entitled to its relief. *Pertuz-Pertuz*, 679 F.3d at 1328. It reiterated that the safety valve statute was to apply *only* to those statutes specifically provided in § 3553(f). *Id.* "The safety valve statute . . . refers to an 'offense under' section 960—not to an 'offense penalized under' section 960 and not to a 'sentence under' section 960." *Id.* at 1329. Accordingly, it concluded § 3553(f) was unambiguous and applied only to the statutes enumerated.

We decline to accept Anchundia-Espinoza's invitation to steer away from this court's strict interpretation of the statute—and the lead of circuits that have addressed this issue. Instead, we follow this court's precedent in strictly construing the safety valve provision. To hold otherwise would run afoul of this court's decision that § 3553(f) is unambiguous. Not only is § 70503 not specifically provided for under § 3553(f), but it is also not an "offense under" § 960, which does, in fact, list other statutes. *See* 21 U.S.C. § 960(a). As the Eleventh Circuit explained, § 3553(f) applies to "offenses under", *not* "offense[s] penalized under" and not "sentence[s] under." *See Pertuz-Pertuz*, 679 F.3d at 1329.

## IV.

Anchundia-Espinoza also contends that he should have received a two-level reduction in his offense level for playing a minor role in the conspiracy. He argues, as he did in the district court, that the district court erred by comparing him only to the co-defendants who played the same role he did, rather than comparing him to all of the other participants in the conspiracy. He asserts that the district court committed, "at the very least, a legal error in the interpretation" of the Guidelines such that remand is required. Generally, the factual determination of whether a defendant played a minor role in the offense is reviewed for clear error. *See Torres-Hernandez*, 843 F.3d at 207.

8

No. 17-40584

The defendant bears "the burden of proving by a preponderance of the evidence that the adjustment [was] warranted." *United States v. Castro*, 843 F.3d 608, 612 (5th Cir. 2016) (quoting *United States v. Miranda*, 248 F.3d 434, 446 (5th Cir. 2001)). "A minor participant adjustment is not appropriate simply because a defendant does less than other participants; in order to qualify as a minor participant, a defendant must have been peripheral to the advancement of the illicit activity." *Miranda*, 248 F.3d at 446–47.

Determining minor participation is a "sophisticated factual determination[]" to be made by the sentencing judge. *United States v. Gallegos*, 868 F.2d 711, 713 (5th Cir. 1989). Here, the district court meticulously compared Anchundia-Espinoza's participation to that of his co-defendants—the only members of the conspiracy about whom the district court had concrete knowledge. Indeed, the only reference to unindicted co-conspirators was defense counsel's statement and the government's acknowledgement that there presumably were other participants in this conspiracy. The district court determined that Anchundia-Espinoza and his co-defendants all played similar roles by accepting money to complete a portion of this drug transaction and by captaining multiple boats to transport very substantial amounts of cocaine. None was the "mastermind" behind the operation, and all seemed to participate for the same amount of time and held the same type of responsibilities. Accordingly, there appears to be no clear error in the district court's fact-finding that Anchundia-Espinoza was not a minor participant. In fact, he appears to have been a part of the conspiracy for even longer than some of his co-defendants. As this court has explained, "[e]ven if [the defendant] played a relatively smaller role in the offense as compared to his other co-defendants, viewing the record[] as a whole[,] the district court did not commit clear error in finding that" Anchundia-Espinoza was "not deserving of a downward adjustment." *United States v. Angeles-Mendoza,* 407 F.3d 742, 754

9

(5th Cir. 2005). Even if the district court misspoke that the minor-participant inquiry permits comparisons only among co-defendants, Anchundia-Espinoza did not meet his burden to prove his minor role because his participation was so substantial—captaining multiple boats to transport such substantial quantities of drugs—and because he failed to present any evidence challenging the government's denominator of co-conspirators. As such, Anchundia-Espinoza certainly has not met his burden to prove by a preponderance of the evidence that he should have received the minor participant reduction.

Accordingly, the judgment of the district court is AFFIRMED.