# United States Court of Appeals
## For the First Circuit

No. 18-1710

UNITED STATES OF AMERICA,

Appellee,

v.

ÁNGEL DE LA CRUZ,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Francisco A. Besosa, U.S. District Judge]

Before

Lynch, Selya, and Kayatta,
Circuit Judges.

Kevin E. Lerman, with whom Eric Alexander Vos, Federal Public Defender, Vivianne M. Marrero, Assistant Federal Public Defender, Supervisor, Appeals Section, and Franco L. Pérez-Redondo, Research & Writing Specialist, were on brief, for appellant.
Antonio L. Pérez-Alonso, Assistant United States Attorney, with whom Rosa Emilia Rodríguez-Vélez, United States Attorney, and Mariana E. Bauzá-Almonte, Assistant United States Attorney, Chief, Appellate Division, were on brief, for appellee.

May 26, 2021

**LYNCH**, **Circuit Judge**. Ángel De la Cruz and two others were intercepted by the U.S. Coast Guard while smuggling drugs on a small ship in the waters north of Puerto Rico. The Coast Guard seized a large amount of cocaine from the ship and arrested De la Cruz and the other two crewmembers. They were brought to Puerto Rico and charged by indictment with several drug-related offenses, including violations of the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. §§ 70503 and 70506. The MDLEA offenses carried a mandatory minimum sentence of ten years' imprisonment. See id. § 70506(a)-(b); 21 U.S.C. § 960(b)(1)(B) (2018).

De la Cruz pleaded guilty to all counts. As to sentencing, he argued that he qualified for "safety valve" relief, which authorizes a district court to impose a sentence below the statutorily prescribed mandatory minimum sentence for certain enumerated offenses if the court makes several specific factual findings at sentencing. See 18 U.S.C. § 3553(f) (2018). The district court held that De la Cruz was ineligible for safety valve relief for his MDLEA offenses because they were not among those offenses specifically enumerated in the safety valve statute, and it sentenced him to the mandatory minimum sentence of ten years' imprisonment under the MDLEA. We now join the majority of circuits in holding that MDLEA offenses were not safety-valve eligible under the then-applicable safety valve provision and so affirm.

- 2 -

I.

Because De la Cruz pleaded guilty, "we draw the facts from the plea colloquy, the unchallenged portions of the presentence investigation report, and the transcript of the sentencing hearing." United States v. Padilla-Colón, 578 F.3d 23, 25 (1st Cir. 2009).

On December 10, 2017, the U.S. Coast Guard detected a suspicious vessel traveling at a high rate of speed north of Fajardo, Puerto Rico. A Coast Guard team intercepted and boarded the ship and found three Dominican nationals on board, including De la Cruz, as well as fifty-three bales of suspected narcotics. The government of the Dominican Republic did not claim nationality over the ship. De la Cruz does not question that both he and the ship were subject to U.S. jurisdiction.

The Coast Guard team conducted field tests of the bales of suspected narcotics and they tested positive for cocaine. All three crewmembers were arrested and brought to Puerto Rico. About 1,325 kilograms of cocaine were seized from the ship.

De la Cruz was indicted on one count of conspiracy to possess with intent to distribute five kilograms or more of a controlled substance on board a vessel subject to the jurisdiction of the United States in violation of the MDLEA, 46 U.S.C. §§ 70503 and 70506; one count of aiding or abetting the MDLEA offense in violation of §§ 70503 and 70506 and 18 U.S.C. § 2; and one count

of conspiracy to import into the United States five kilograms or more of a controlled substance in violation of 21 U.S.C. §§ 952, 960, and 963.

In March 2018, De la Cruz entered a straight plea of guilty to all three counts. He argued for a safety valve reduction, and the government opposed and argued that he was ineligible for safety valve relief as a matter of law because the applicable safety valve provision did not apply to MDLEA offenses. The government argued that Congress had deliberately chosen in the text of the safety valve statute to exclude MDLEA offenses from those eligible for safety valve relief by explicitly including other offenses in the safety valve statute, but not MDLEA offenses.

The district court agreed with the government and ruled that De la Cruz was ineligible for safety valve relief in a written memorandum and order in June 2018. The district court relied on a previous decision it had written in which it had held that the plain language of the safety valve statute did not apply to offenses under the MDLEA and that the history of the MDLEA and safety valve statute and case law from other circuits further confirmed that conclusion. See United States v. Espinal-Mieses, 313 F. Supp. 3d 376, 381-85 (D.P.R. 2018). The court went on to conclude that even though De la Cruz had also been convicted of non-MDLEA offenses, his sentence could not fall below the mandatory minimum of ten years' imprisonment for the MDLEA offenses. De la

Cruz filed a motion for reconsideration, which the district court denied.

At the sentencing hearing in July 2018, the district court denied De la Cruz's request for a minor role reduction.[1] Nonetheless, it varied downward and imposed the mandatory minimum sentence of ten years' imprisonment as to each count to be served concurrently.

De la Cruz timely appealed his sentence.

II.

De la Cruz makes two primary arguments: (1) that the district court erroneously determined that the 18 U.S.C. § 3553(f) safety valve provision did not apply to MDLEA offenses such that it could not sentence him below the ten-year mandatory minimum; and (2) that the court erred in denying the minor role reduction.[2]

---

[1]    The court did apply a two-level reduction to De la Cruz's offense level under United States Sentencing Guidelines Manual § 2D1.1(b)(17), to which both the defendant and the government agreed. Under the then-applicable 2016 Guidelines, § 2D1.1(b)(17) provided for a two-level reduction if the defendant met the five fact-based criteria under 18 U.S.C. § 3553(f), even if the defendant did not qualify for the safety valve relief authorizing a sentence below the applicable statutory minimum. See U.S. Sent'g Guidelines Manual § 2D1.1(b)(17) (U.S. Sent'g Comm'n 2016); id. § 5C1.2(a)(1)-(5); see also United States v. Warnick, 287 F.3d 299, 303-04 (4th Cir. 2002) (applying a previous version of the two-level reduction).

[2]    All references to § 3553(f) and the safety valve provision are to the previous version in effect at the time of the defendant's sentencing, unless otherwise stated.

The parties agree that, because the district court imposed the minimum statutory sentence required under the MDLEA, De la Cruz's challenge to the denial of the minor role reduction is moot if this Court rejects his safety valve argument.[3]

The government does not challenge De la Cruz's assertion that, if eligible, he would meet the five fact-based criteria for safety valve relief. We review de novo the issue of whether the safety valve applied to MDLEA offenses because it is a purely legal issue of statutory interpretation. See Padilla-Colón, 578 F.3d at 29.

Three of our sister circuits have already decided this precise issue and held that the safety valve provision did not apply to offenses under the MDLEA under the plain language of the statute. See United States v. Anchundia-Espinoza, 897 F.3d 629, 633-34 (5th Cir. 2018); United States v. Pertuz-Pertuz, 679 F.3d 1327, 1328-29 (11th Cir. 2012); United States v. Gamboa-Cardenas, 508 F.3d 491, 496-502 (9th Cir. 2007). Only one circuit has held that the safety valve provision did apply to such offenses,

---

[3] De la Cruz concedes on appeal that the safety valve issue that he raises is an open question in this circuit. Nonetheless, he cites United States v. Rodríguez-Durán, 507 F.3d 749, 772 (1st Cir. 2007), and United States v. Bravo, 489 F.3d 1, 11-12 (1st Cir. 2007), and argues that "the Court has previously assumed without deciding that the safety valve may apply to defendants convicted of violating the MDLEA." Neither of those cases states such an assumption and the Court did not consider the issue. See Rodríguez-Durán, 507 F.3d at 772-74; Bravo, 489 F.3d at 11-12.

reasoning that it did so based on the interaction between the MDLEA and the penalty provision of 21 U.S.C. § 960. See United States v. Mosquera-Murillo, 902 F.3d 285, 292-96 (D.C. Cir. 2018). We agree with the majority view and hold that the applicable safety valve provision did not apply to offenses under the MDLEA based on the plain language of the statute as well as the history and structure of that statute and others.[4]

## A.    The Relevant Statutes

Because the language of the MDLEA, 21 U.S.C. § 960, and the safety valve provision is essential to both parties' arguments, we first discuss the language of those statutes and provide a brief history of each.

Congress enacted the MDLEA in 1980 "to facilitate increased enforcement by the Coast Guard of laws relating to the importation of controlled substances, and for other purposes." Pub. L. No. 96-350, 94 Stat. 1159, 1159 (1980) (codified as amended at 46 U.S.C. §§ 70501-70507).[5]  The MDLEA provides that "[w]hile

[4]    The defendant has not argued on appeal that interpreting the safety valve provision not to apply to MDLEA offenses would somehow contravene the purpose of the safety valve statute, the MDLEA, or any other statute. Rather, he focuses his arguments on the language of the safety valve provision, the MDLEA, and 21 U.S.C. § 960, as interpreted in Mosquera-Murillo. The government responds with arguments based on the language of the statute, as well as its history and structure in the context of other statutes.

[5]    The MDLEA, which was originally codified at 46 U.S.C. §§ 1901 to 1904, was amended several times between 1980 and when the safety valve provision was enacted in 1994, with the most

on board a covered vessel, an individual may not," among other things, "knowingly or intentionally . . . manufacture or distribute, or possess with intent to manufacture or distribute, a controlled substance." 46 U.S.C. § 70503(a). A separate penalty section of the MDLEA, in turn, provides that an offense or a conspiracy or attempt to commit an offense under § 70503(a)(1) "shall be punished as provided in [21 U.S.C. § 960]" if it is the person's first felony drug offense. 46 U.S.C. § 70506(a)-(b); see also 21 U.S.C. § 962(b).

Congress enacted 21 U.S.C. § 960 in 1970 as part of the Controlled Substances Import and Export Act. Pub. L. No. 91-513, § 1010, 84 Stat. 1236, 1290 (1970) (codified as amended at 21 U.S.C. § 960 (2018)). Section 960 has several subsections. Section 960(a) provides the "[u]nlawful acts" which are punishable under the statute and specifically lists six other statutes which constitute those unlawful acts under § 960. 21 U.S.C. § 960(a) (2018) (listing 21 U.S.C. §§ 825, 952, 953, 955, 957, and 959 as unlawful conduct for purposes of § 960). MDLEA offenses are not among those listed as "[u]nlawful acts" under § 960(a). Although the MDLEA did not exist at the time § 960 was first enacted, § 960 was later amended a number of times after the MDLEA was enacted,

_____

substantial amendment occurring in 1986. See Maritime Drug Law Enforcement Prosecution Improvements Act of 1986, Pub. L. No. 99-570, §§ 3201-3202, 100 Stat. 3207, 3207-95 to -97.

- 8 -

including in the Maritime Drug Law Enforcement Prosecution Improvements Act of 1986. See Pub. L. No. 99-570, §§ 1005, 1302, 100 Stat. 3207, 3207-6, 3207-15 to -18 (1986). None of those later amendments to § 960 added the MDLEA to the list of offenses which constituted "[u]nlawful acts" under § 960(a).

Section 960(a) provides that the enumerated unlawful acts "shall be punished as provided in subsection (b)." It is pursuant to § 960(b) that MDLEA offenses under § 70503(a)(1) are punished. See 46 U.S.C. § 70506(a)-(b).

Section 960(b), titled "[p]enalties," describes how the drug-related offenses to which it applies should be punished based on the drug type and amount involved. It provides that when the violation involves "5 kilograms or more of a mixture or substance containing a detectable amount of [cocaine] . . . the person committing such violation shall be sentenced to a term of imprisonment of not less than 10 years" if there was no death or serious bodily injury resulting from the use of the controlled substance and the person has no prior conviction for a felony drug offense. 21 U.S.C. § 960(b)(1) (2018).

In 1994, Congress enacted the Violent Crime Control and Law Enforcement Act which, among other things, created the safety valve provision at issue. Pub. L. No. 103-322, § 80001(a), 108 Stat. 1796, 1985-86 (1994) (codified as amended at 18 U.S.C.

§ 3553(f) (2018)).  The version of the safety valve provision that applies to De la Cruz[6] provided that

> [n]otwithstanding any other provision of law, in the case of an offense under [21 U.S.C. §§ 841, 844, or 846] or [21 U.S.C. §§ 960 or 963], the court shall impose a sentence pursuant to guidelines promulgated by the United States Sentencing Commission . . . without regard to any statutory minimum sentence, if the court finds at sentencing, after the Government has been afforded the opportunity to make a recommendation, that [the defendant satisfies five criteria].[7]

---

[6]    In December 2018, Congress enacted the First Step Act which, among other things, amended the § 3553(f) safety valve provision to explicitly include MDLEA offenses under §§ 70503 and 70506 as offenses eligible for relief from statutory minimums. Pub. L. No. 115-391, § 402(a)(1)(A)(ii), 132 Stat. 5194, 5221 (2018).  The title of that section of the First Step Act is "Broadening of Existing Safety Valve." Id. § 402.  Congress chose not to make the amendment to the safety valve provision apply retroactively.  Id. § 402(b).  Because De la Cruz was sentenced before the First Step Act was enacted, the previous version of the safety valve provision applies to him.

[7]    Those five criteria are that:

> (1) the defendant does not have more than 1 criminal history point, as determined under the sentencing guidelines; (2) the defendant did not use violence or credible threats of violence or possess a firearm or other dangerous weapon (or induce another participant to do so) in connection with the offense; (3) the offense did not result in death or serious bodily injury to any person; (4) the defendant was not an organizer, leader, manager, or supervisor of others in the offense, as determined under the sentencing guidelines and was not engaged in a continuing criminal enterprise, as defined in section 408 of the Controlled Substances Act; and (5) not later than the time of the sentencing hearing, the defendant has

- 10 -

18 U.S.C. § 3553(f) (2018).  MDLEA offenses under §§ 70503 and 70506 were not among the five specifically enumerated offenses in § 3553(f).

B.  The Safety Valve Provision Did Not Apply to MDLEA Offenses Under the Plain Language of the Statute

We begin with the safety valve statute's language in interpreting its meaning.  United States v. Vidal-Reyes, 562 F.3d 43, 50 (1st Cir. 2009).  "In so doing, we accord the statutory text 'its ordinary meaning by reference to the specific context in which that language is used, and the broader context of the statute as a whole.'"  Recovery Grp., Inc. v. Comm'r, 652 F.3d 122, 125 (1st Cir. 2011) (quoting Mullane v. Chambers, 333 F.3d 322, 330 (1st Cir. 2003) (internal quotation marks omitted)).  "When exhausting those [textual and structural] clues enables us to resolve the interpretive question put to us, our 'sole function' is to apply the law as we find it, not defer to some conflicting reading . . . ."  Niz-Chavez v. Garland, 141 S. Ct. 1474, 1480

---

truthfully provided to the Government all information and evidence the defendant has concerning the offense or offenses that were part of the same course of conduct or of a common scheme or plan, but the fact that the defendant has no relevant or useful other information to provide or that the Government is already aware of the information shall not preclude a determination by the court that the defendant has complied with this requirement.

18 U.S.C. § 3553(f)(1)-(5) (2018).

- 11 -

(2021) (citation omitted) (quoting <u>Lamie</u> v. <u>U.S. Tr.</u>, 540 U.S. 526, 534 (2004)); <u>see also</u> <u>Recovery Grp.</u>, 652 F.3d at 125 ("If the statutory language is plain and unambiguous, we 'must apply the statute according to its terms,' except in unusual cases where, for example, doing so would bring about absurd results." (citation omitted) (quoting <u>Carcieri</u> v. <u>Salazar</u>, 555 U.S. 379, 387 (2009))).

The language of the safety valve provision plainly and unambiguously did not apply to offenses under the MDLEA. Section 3553(f) provided that the safety valve could apply to "an offense under" one of the five enumerated statutes listed in that provision. 18 U.S.C. § 3553(f) (2018). The MDLEA was not one of those enumerated statutes. By explicitly listing certain statutes and excluding others, Congress clearly intended for the safety valve provision to apply only to offenses under the specific statutes listed and not to offenses under the MDLEA. <u>Anchundia-Espinoza</u>, 897 F.3d at 633; <u>Pertuz-Pertuz</u>, 679 F.3d at 1328; <u>Gamboa-Cardenas</u>, 508 F.3d at 497-98; <u>see also</u> <u>United States</u> v. <u>Hernández-Ferrer</u>, 599 F.3d 63, 67-68 (1st Cir. 2010) (applying the "expressio unius est exclusio alterius" canon of statutory construction, "which translates roughly as 'the expression of one thing is the exclusion of other things'" (emphasis omitted)).[8] Congress had a

---

[8] Other circuits have also strictly construed the § 3553(f) safety valve provision not to apply to offenses under other statutes which were not expressly included in the safety valve provision. <u>See, e.g.</u>, <u>United States</u> v. <u>Koons</u>, 300 F.3d 985,

good reason for not including MDLEA offenses among those eligible for safety valve relief: at that time, Congress was especially concerned about drug trafficking over the seas and found that it was "a serious international problem and [was] universally condemned" and "present[ed] a specific threat to the security and societal well-being of the United States."  Maritime Drug Law Enforcement Prosecution Improvements Act of 1986, Pub. L. No. 99-570, § 3202, 100 Stat. 3207, 3207-95.

Nor are MDLEA offenses "offense[s] under" § 960, which was one of the statutes expressly included in the safety valve provision.  See 18 U.S.C. § 3553(f) (2018).  Section 960(a) lists six statutes the violation of any one of which constitutes the "[u]nlawful acts" under § 960.  21 U.S.C. § 960(a) (2018).  Violations of one of those other listed statutes would be eligible for safety valve relief because they are offenses under § 960.  Anchundia-Espinoza, 897 F.3d at 634; Pertuz-Pertuz, 679 F.3d at 1329; Gamboa-Cardenas, 508 F.3d at 497.  The MDLEA is not one of the statutes expressly listed under § 960(a), and so an MDLEA offense is not an offense under § 960 for purposes of safety valve relief.  Anchundia-Espinoza, 897 F.3d at 634; Pertuz-Pertuz, 679

---

993 (8th Cir. 2002) (holding that the safety valve provision did not apply to offenses under 21 U.S.C. § 860 because it was not one of the statutes specifically listed in the safety valve); United States v. McQuilkin, 78 F.3d 105, 108 (3d Cir. 1996) (same).

F.3d at 1329; Gamboa-Cardenas, 508 F.3d at 497-99; see also Hernández-Ferrer, 599 F.3d at 67-68.

The fact that MDLEA offenses are punished pursuant to § 960(b) does not change that conclusion. As our sister circuits have noted, the safety valve provision applies to "offense[s] under" one of the listed statutes, not to "offenses punishable under," "offenses penalized under," or "sentences under" one of those listed statutes. See Anchundia-Espinoza, 897 F.3d at 634; Pertuz-Pertuz, 679 F.3d at 1329; Gamboa-Cardenas, 508 F.3d at 498-99; see also 18 U.S.C. § 3553(f) (2018). Section 960 provides its own offense conduct, by incorporation of other statutes, and the MDLEA provides its own offense conduct which is not incorporated into § 960. See 46 U.S.C. § 70506(a)-(b); 21 U.S.C. § 960(a) (2018). That § 70506 incorporates the penalty provision of § 960 does not change the fact that those separate statutes each defines and criminalizes different conduct which constitutes the offenses under those two statutes.

De la Cruz relies on the D.C. Circuit's decision in Mosquera-Murillo to support his § 960 argument. Mosquera-Murillo, in turn, states that it was relying on the Supreme Court's decisions in Patterson v. New York, 432 U.S. 197, 210 (1977), Apprendi v. New Jersey, 530 U.S. 466, 490 (2000), and Alleyne v. United States, 570 U.S. 99, 105-06 (2013) (plurality), in holding that MDLEA offenses are offenses under § 960 because the penalty

- 14 -

provision in § 960(b) provides elements of those offenses.[9]  See 902 F.3d at 293 (stating that "[o]ffenses are defined by the provisions that supply their elements" (citing Patterson, 432 U.S. at 210)).  In our view, Patterson, Apprendi, and Alleyne are inapposite because none addresses the statutory interpretation issue here.[10]

---

[9]  The D.C. Circuit in Mosquera-Murillo also relied on the fact that the government had charged the defendants with violations of both the MDLEA and § 960 in the same count of the indictment as further support for the § 960 argument.  See 902 F.3d at 293-94.  The indictment here charged violations of the MDLEA and § 960 in separate counts.

[10]  Patterson addressed the issue of whether placing the burden of proving an affirmative defense at a murder trial on the defendant violates the Due Process Clause of the Fourteenth Amendment.  432 U.S. at 198.  Patterson held that "the Due Process Clause requires the prosecution to prove beyond a reasonable doubt all of the elements included in the definition of the offense of which the defendant is charged" but does not require the prosecution to prove the nonexistence of an affirmative defense where the affirmative defense does not require the defendant to disprove an element of the charged offense.  Id. at 210; see also id. at 206-07.

Apprendi addressed the issue of "whether the Due Process Clause of the Fourteenth Amendment requires that a factual determination authorizing an increase in the maximum prison sentence for an offense from 10 to 20 years be made by a jury on the basis of proof beyond a reasonable doubt."  530 U.S. at 469. The Supreme Court held that, as a matter of constitutional due process, "any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in an indictment, submitted to a jury, and proven beyond a reasonable doubt."  Id. at 476 (quoting Jones v. United States, 526 U.S. 227, 243 n.6 (1999)); see also id. at 490.  The Supreme Court in Alleyne concluded the same with respect to any fact that increases a mandatory minimum, holding that "[a]ny fact that, by law, increases the penalty for a crime is an 'element' that must be submitted to the jury and found beyond a reasonable doubt."  570 U.S. at 103 (citing Apprendi, 530 U.S. at 483 n.10, 490).

- 15 -

Even if drug type and drug amount are elements of an MDLEA offense for purposes of punishment, as provided by § 960(b), and so those facts must be proven to a jury beyond a reasonable doubt as a matter of constitutional due process under Patterson, Apprendi, and Alleyne, those cases do not say anything about what "offense under" means for purposes of safety valve relief as a matter of statutory interpretation. That is a separate question about what Congress intended when it enacted the safety valve statute in 1994, and the plain and unambiguous language of 18 U.S.C. § 3553(f) simply did not apply to offenses under the MDLEA.

We cannot conclude that the technical definition of what an "offense" might mean under Apprendi and Alleyne, which post-date the enactment of the safety valve provision, was the definition that Congress intended in 1994. See Niz-Chavez, 141 S. Ct. at 1480 ("When called on to resolve a dispute over a statute's meaning, this Court normally seeks to afford the law's terms their ordinary meaning at the time Congress adopted them."); Ngiraingas v. Sanchez, 495 U.S. 182, 187 (1990). At that time, Black's Law Dictionary defined "offense" as "[a] felony or misdemeanor; a breach of the criminal laws; violation of law for which penalty is prescribed." Offense, Black's Law Dictionary (6th ed. 1990); see also Taniguchi v. Kan Pac. Saipan, Ltd., 566 U.S. 560, 566-69 (2012) (using dictionary definitions to interpret a term in a statute). A "breach" or "violation" of the law connotes the

- 16 -

actions or conduct by the perpetrator which warrants the penalty prescribed by the law, but neither definition refers to the conduct that bears only on the degree of that penalty.

To the contrary, our understanding of "offense" comes from the Supreme Court's opinion in McMillan v. Pennsylvania, 477 U.S. 79 (1986). In McMillan, the Supreme Court held that sentencing factors which come into play only after the defendant has been found guilty beyond a reasonable doubt will not be considered elements of the substantive offense except under limited circumstances not involved here. See id. at 84-91 (relying on Patterson). At the time the safety valve provision was enacted, the Circuit Courts of Appeals applied the McMillan rule in holding that drug amount for purposes of sentencing was not an element of the substantive offense. See, e.g., United States v. Lowden, 955 F.2d 128, 129-30 (1st Cir. 1992); United States v. Lam Kwong-Wah, 966 F.2d 682, 685-88 (D.C. Cir. 1992); United States v. Royal, 972 F.2d 643, 649-50, 649 n.10 (5th Cir. 1992); United States v. Harrison-Philpot, 978 F.2d 1520, 1523-24 (9th Cir. 1992); United States v. Perez, 960 F.2d 1569, 1574-75 (11th Cir. 1992); United States v. Madkour, 930 F.2d 234, 237-38 (2d Cir. 1991); United States v. Moreno, 899 F.2d 465, 472-74 (6th Cir. 1990); United States v. Reynolds, 900 F.2d 1000, 1002-04 (7th Cir. 1990); United States v. Powell, 886 F.2d 81, 84-85 (4th Cir. 1989); United States v. Jenkins, 866 F.2d 331, 333-34 (10th Cir. 1989); United States

v. Woods, 834 F.2d 1382, 1389-90 (8th Cir. 1987). It was not until years after the safety valve provision was enacted that McMillan's definition of what constituted an "offense" and "offense elements" was overruled. See United States v. Haymond, 139 S. Ct. 2369, 2378 (2019) (stating that Alleyne expressly overruled McMillan and extended Apprendi).

C.  The History and Structure of the MDLEA, Safety Valve Provision, and Other Statutes Confirm That the Safety Valve Provision Did Not Apply to MDLEA Offenses

The plain text resolves the statutory interpretation question. And in any event, our interpretation is further confirmed by other indicia. For confirmation, we look to the legislative history of the safety valve and other statutes. See, e.g., Niz-Chavez, 141 S. Ct. at 1484; Telecomms. Regul. Bd. of P.R. v. CTIA-The Wireless Ass'n, 752 F.3d 60, 66 (1st Cir. 2014). We also look to the structure of the safety valve provision in the context of the act which enacted it and in the context of other statutes. See, e.g., Niz-Chavez, 141 S. Ct. at 1482-84; City of Providence v. Barr, 954 F.3d 23, 31-44 (1st Cir. 2020); Carnero v. Bos. Sci. Corp., 433 F.3d 1, 7-11 (1st Cir. 2006).

The MDLEA was enacted about fourteen years before -- and subject to significant amendment eight years before -- the safety valve provision was enacted. Congress was clearly aware of the MDLEA at the time it created the safety valve and could easily have included it among the safety valve's enumerated offenses if

- 18 -

it had so wanted.  See Anchundia-Espinoza, 897 F.3d at 634; Gamboa-Cardenas, 508 F.3d at 497-98.  Moreover, § 960 was amended several times after the MDLEA was enacted, including as part of the act which amended the MDLEA in 1986 and the act which enacted the safety valve provision in 1994.  None of those amendments added the MDLEA to the list of statutes that constituted the unlawful conduct under § 960.  It would have been far easier for Congress simply to include MDLEA offenses under either § 3553(f) or § 960(a) if it intended for the safety valve to apply to such offenses, rather than rely on a complex analysis by which a court must infer safety valve relief through the MDLEA's incorporation of a penalty provision that does not itself discuss the safety valve.  We cannot conclude that Congress intended to do indirectly what it could have done directly but did not.  See Anchundia-Espinoza, 897 F.3d at 633-34; Pertuz-Pertuz, 679 F.3d at 1328-29; Gamboa-Cardenas, 508 F.3d at 497-98; see also Franklin Cal. Tax-Free Tr. v. Puerto Rico, 805 F.3d 322, 338 (1st Cir. 2015).

That Congress eventually did amend the § 3553(f) safety valve provision in 2018 to explicitly include offenses under the MDLEA -- eleven years after the first appellate opinion holding that the safety valve did not apply to such offenses, see Gamboa-Cardenas, 508 F.3d at 491 -- and chose not to apply that amendment retroactively is further evidence that the safety valve did not

previously apply to offenses under the MDLEA.[11]  See Heckler v. Turner, 470 U.S. 184, 209-11 (1985) (referring to later enacted legislation in interpreting an earlier statute and stating that "it carries . . . considerable retrospective weight" (collecting cases)); Seatrain Shipbuilding Corp. v. Shell Oil Co., 444 U.S. 572, 595-96 (1980) (stating that "while the views of subsequent Congresses cannot override the unmistakable intent of the enacting one, such views are entitled to significant weight" (citation omitted)).

This later enactment in 2018 is entitled to weight, and it reinforces our conclusions based on the language of the statute. The fact that the title of the operative section of the First Step Act is called "Broadening of Existing Safety Valve," Pub. L. No. 115-391, § 402, 132 Stat. 5194, 5221 (2018), is further evidence that Congress understood the older version of the statute to have a narrower scope, see Fla. Dep't of Revenue v. Piccadilly Cafeterias, Inc., 554 U.S. 33, 47 (2008) (stating that "statutory titles and section headings 'are tools available for the resolution of a doubt about the meaning of a statute'" (quoting Porter v.

---

[11]    In his brief, De la Cruz refers to the "undue sentencing disparity" for defendants like De la Cruz who were sentenced shortly before the enactment of the First Step Act.  But any disparity is the result of Congress's own choice to make the First Step Act's amendment to the safety valve provision not retroactive. And because all MDLEA defendants sentenced after December 2018 are now eligible for safety valve relief, only a small group of defendants is likely to be affected by this decision.

Nussle, 534 U.S. 516, 528 (2002) (internal quotation marks omitted))). Indeed, it would have been unnecessary for Congress to "broaden" the existing safety valve to encompass MDLEA offenses if those offenses were already within its scope. The use of the term "broaden" in adding MDLEA offenses, rather than "confirm" or "clarify," also reinforces that even post-Apprendi, Congress did not have in mind Mosquera-Murillo's technical, case law-based view of the word "offense" for purposes of the safety valve.

Furthermore, the structure of the act which enacted the safety valve provision, as well as the language used in surrounding statutes, confirm that the safety valve provision did not apply to offenses under the MDLEA. Congress enacted the safety valve provision in the Violent Crime Control and Law Enforcement Act of 1994. Pub. L. No. 103-322, § 80001(a), 108 Stat. 1796, 1985-86. In that same act, Congress added a subsection to 18 U.S.C. § 924 which made it unlawful to "smuggle[] or knowingly bring[] into the United States a firearm" "with intent to engage in or to promote conduct that . . . is punishable under the Controlled Substances Act (21 U.S.C. [§§] 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. [§§] 951 et seq.), or the Maritime Drug Law Enforcement Act [(46 U.S.C. §§ 70501 et seq.)]." Pub. L. No. 103-322, § 110503, 108 Stat. 1796, 2016 (codified as amended at 18 U.S.C. § 924(k)) (emphasis added). That Congress explicitly referred to the MDLEA in another section of the same act which

created the safety valve provision to define another offense shows that Congress intended to exclude MDLEA offenses from the scope of the safety valve provision. See Russello v. United States, 464 U.S. 16, 23 (1983) ("[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." (alteration in original) (quoting United States v. Wong Kim Bo, 472 F.2d 720, 722 (5th Cir. 1972))).

Congress also used the phrase "punishable under" in enacting the new subsection of 18 U.S.C. § 924 in the Violent Crime Control and Law Enforcement Act of 1994 to define the unlawful conduct covered by that subsection. Pub. L. No. 103-322, § 110503, 108 Stat. 1796, 2016. If Congress had intended the safety valve provision to apply to offenses "punishable under" one of the statutes enumerated in that provision, Congress could have used that same language. That it instead chose to use different language in different parts of the same act which created the safety valve provision is important. See Russello, 464 U.S. at 23. And in the new subsection of 18 U.S.C. § 924 enacted in the Violent Crime Control and Law Enforcement Act of 1994, Congress listed the Controlled Substances Import and Export Act (which includes 21 U.S.C. § 960) and the MDLEA separately using the disjunctive "or." Referring to those statutes in that way is

- 22 -

further evidence that Congress did not intend for MDLEA offenses to be subsumed under § 960 through the MDLEA's incorporation of the penalty provision in § 960(b).

At the time Congress enacted the safety valve provision, there were numerous other statutes where Congress had specifically referred to the MDLEA when describing drug-related offenses, which is further evidence that Congress knew how to include MDLEA offenses when it so intended. See, e.g., 18 U.S.C. § 924(c)(2) (1994) (defining "drug trafficking crime" as "any felony punishable under the Controlled Substances Act (21 U.S.C. [§§] 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. [§§] 951 et seq.), or the Maritime Drug Law Enforcement Act [(46 U.S.C. §§ 70501 et seq.)] (emphasis added)); id. § 924(e)(2)(A)(i) (1994) (defining a "serious drug offense" using similar language); id. § 924(g)(2) (1994) (using similar language in making it unlawful to travel interstate with a firearm); id. § 929(a)(2) (1994) (using the same definition of "drug trafficking crime" as § 924(c)(2)); id. § 3142(e) (1994) (prescribing a rebuttable presumption of pretrial detention for defendants where "there is probable cause to believe that the person committed an offense for which a maximum term of imprisonment of ten years or more is prescribed in the Controlled Substances Act (21 U.S.C. [§§] 801 et seq.), the Controlled Substances Import and Export Act (21 U.S.C. [§§] 951 et seq.), the Maritime Drug Law Enforcement

Act [(46 U.S.C. §§ 70501 et seq.)], or an offense under section [18 U.S.C. §] 924(c)" (emphasis added)); 28 U.S.C. § 994(h) (1994) (providing that the Sentencing Commission's guidelines must specify a prison sentence "at or near the maximum term authorized for categories of defendants" who are at least eighteen years old and have been convicted of multiple felonies that each are "a crime of violence . . . or . . . an offense described in section 401 of the Controlled Substances Act (21 U.S.C. [§] 841), sections 1002(a), 1005, and 1009 of the Controlled Substances Import and Export Act (21 U.S.C. [§§] 952(a), 955, and 959), and the Maritime Drug Law Enforcement Act [(46 U.S.C. §§ 70501 et seq.)]" (emphasis added)).

And in several of these statutes which existed at the time Congress enacted the safety valve provision, Congress used the term "punishable under" when referring to § 960 which further demonstrates it distinguished between "offenses under" and "offenses punishable under." See, e.g., 18 U.S.C. § 924(c)(2) (1994); id. § 924(g)(2) (1994); id. § 929(a)(2) (1994). Several of these statutes also listed both MDLEA offenses and § 960 offenses separately and in the disjunctive. See, e.g., 18 U.S.C. § 924(c)(2) (1994); id. § 924(e)(2)(A)(i) (1994); id. § 924(g)(2) (1994); id. § 929(a)(2) (1994). These are further indicia that Congress did not intend for MDLEA offenses to fall under § 960.

- 24 -

Finally, the plain language reading of the safety valve provision is supported by the possible effect the defendant's contrary reading would have on the availability of safety valve relief. If we were to accept De la Cruz's argument and the position of the D.C. Circuit in Mosquera-Murillo that MDLEA offenses were eligible for safety valve relief because § 960 provides some of the elements for those offenses, that likely would have consequences as to other separate offenses also not explicitly listed. The government argues that offenses under both 21 U.S.C. §§ 859 and 860 would likely also be eligible for safety valve relief, even though neither was listed in 18 U.S.C. § 3553(f). After all, §§ 859 and 860 both refer to and incorporate a violation of 21 U.S.C. § 841(a)(1) (which is one of the statutes listed in the safety valve provision) as an element of the offense; add an additional element of distributing a controlled substance to someone under twenty-one years old, see id. § 859, or "distributing, possessing with intent to distribute, or manufacturing a controlled substance in or on, or within" certain protected areas, such as schools or public housing facilities, id. § 860(a)-(b), or hiring someone under eighteen years old to do so or to assist in doing so, id. § 860(c); and then set enhanced penalties which are calculated by reference to the penalties provided in § 841 that are based on drug type and drug amount, see id. §§ 841(b), 859, 860.

Yet every circuit to have directly decided the issue has held that offenses under § 860 are not eligible for § 3553(f) safety valve relief.  See United States v. Phillips, 382 F.3d 489, 499-500 (5th Cir. 2004); Koons, 300 F.3d at 993; United States v. Kakatin, 214 F.3d 1049, 1051-52 (9th Cir. 2000); United States v. Anderson, 200 F.3d 1344, 1346-48 (11th Cir. 2000); McQuilkin, 78 F.3d at 107-09; see also United States v. Warnick, 287 F.3d 299, 303-04 (4th Cir. 2002).  But see Mosquera-Murillo, 902 F.3d at 296 (discussing but not deciding the issue).  That De la Cruz's and Mosquera-Murillo's reasoning would indirectly expand the § 3553(f) safety valve to even more statutes which are not explicitly included in that safety valve provision is evidence that Congress did not intend this reading.[12]

### III.

De la Cruz's sentence and the judgment of the district court are affirmed.

---

[12]    In his brief, De la Cruz argues that the "unfairness [of his sentence] is compounded by the government's documented practice of extending safety-valve relief to some MDLEA defendants while denying it to others."  But De la Cruz does not develop that argument and so it is waived.  See Henderson v. Mass. Bay Transp. Auth., 977 F.3d 20, 33 (1st Cir. 2020).

He also raised the rule of lenity for the first time at oral argument.  Any argument based on the rule of lenity is also waived because it was not made in his opening brief.  See Bernardo ex rel. M & K Eng'g, Inc. v. Johnson, 814 F.3d 481, 492 n.17 (1st Cir. 2016).  Even bypassing that waiver issue, the rule of lenity does not apply here because the safety valve provision is not ambiguous.  See United States v. Pinkham, 896 F.3d 133, 138 (1st Cir. 2018).